3833.  ROME INSURANCE CO. *v.* THOMAS.

1. While declarations of an alleged agent are not admissible to prove agency, still the error of permitting a witness to testify that a named person said he was the agent of another is immaterial when the statement is made in connection with the recital of such facts and circumstances as would fully authorize the conclusion that he did in fact sustain that relation to the alleged principal. Where the extraneous circumstances, independently of and without regard to the declarations of the agent himself, conclusively tend to establish the fact of his agency, his declarations, though inadmissible if standing alone, may, as part of the res gestæ of the transaction, be considered.

2. A trial judge is not required to perfect a request which is incorrect, and if the charge requested is defective, he may refuse instructions upon that subject altogether, unless the instruction relates to a matter so material to the issue .as that, even in the absence of a request, it would be error to omit to charge the jury upon the subject.

3. As to all matters affecting conditions precedent to a -contract of insurance, the knowledge of the agent of the insurance company is imputed to the company, and the company is thereby charged with notice of any facts, affecting the risk about to be assumed, which may have come to or rest in the knowledge of its agent, and which good faith in the discharge of his duty as agent would require him to disclose to his principal.

4. If, before or at the time of execution of the contract of insurance, the insurance company's agent who procured the contract had notice that the assured was not in good health, but on the contrary was suffering from an incurable disease, and nevertheless the policy was issued and delivered, and the premium accepted thereon, the insurer will be presumed to have waived a condition avoiding the policy in the event of ill health of the·assured at the time of its delivery, and will be es-

topped from setting up that provision of the policy in defense to an action upon the contract of insurance.

DECIDED SEPTEMBER 27, 1912.

Action on insurance policy; from city court of Columbus—Judge Tigner.   November 2, 1911.

*H. R. Goetchius, Chapman & Howard,* for plaintiff in error.

*D. L. Parmer, E. H. Rawls,* contra.

RUSSELL, J.   Hazel Thomas, by her next friend, brought suit against the Rome Insurance Company for $180, besides interest, claimed to be due her as beneficiary of an insurance policy upon the life of her mother.   It was admitted that the policy was issued by the company and the premiums paid up to and including September 26, 1910; that the insured died on October 31, 1910, and that demand for payment had been made by the beneficiary, and had been refused.   There was no contradiction of the evidence to the effect that the application was taken by one J. E. Sharpe, who was an agent of the company; that the policy was issued August 1, 1910; that the premiums were regularly paid when due, up to and including September 26, 1910; that the next premium, was due October 3, 1910; that the insured died of pellagra, and had pellagra two years before her death, and had been attended by physicians for it, but that she was not afflicted with any other disease or complaint.   There was sharp conflict in the testimony as to whether the agent—Sharpe—had notice at the time he took the policy that the insured had pellagra.   The evidence was also in conflict as to whether the assured signed the application and the physician's certificate.   There was positive testimony in behalf of the plaintiff that the assured did not sign either the application or the medical examiner's report,—that the signatures there appearing were not her genuine signatures.   The defendant produced evidence to the effect that its agent had no notice of the ill health of the assured, and that no other agent of the company had any reason to suspect that the assured was not in good health.   The defendant contended that the policy lapsed for non-payment of premiums, and the evidence as to this point was in conflict.   The evidence on the part of the plaintiff was that the insured died on October 28, 1910, while there was testimony in behalf of the defendant that she did not die until October 31, 1910.   The clause of the policy pertinent to this issue was that "Should the death of the insured occur while

any premium is in arrears not exceeding four weeks, the company will nevertheless pay the policy, subject to its conditions." Under the defendant's evidence, if the insured died October 31, the policy had lapsed, because the premiums were then more than four weeks in arrears. But under the plaintiff's testimony that the insured died October 28, the policy had not lapsed. In addition to this, the plaintiff introduced testimony to the effect that payment of the accrued premiums was tendered on October 18, and was refused by an agent of the company, who was authorized to receive them.

Summarizing the material issues of fact, only three were presented: (1) Did the company, at the time the application was taken, have notice that the insured had pellagra? (2) Did the insured die on October 28, or on October 31, 1910? (3) Did the insured make any material misrepresentations with intent to defraud the insurance company by inducing it to issue the policy? The evidence on behalf of the plaintiff as to each of these issues was sufficient to sustain, as matter of fact, the finding of the jury; and, therefore, the question as to whether the trial court erred in refusing a new trial depends upon the general assignment of error, that the verdict is contrary to law, and those specific assignments of error in which complaint is made that the court erred in the admission of certain testimony, in instructions to the jury, and in refusing to instruct as requested.

1. It is insisted that the court erred in permitting the witness Ellene Thomas, over the objection of the defendant that agency could not legally be shown by proof of declarations of the alleged agent, and that the proposed evidence was hearsay, to testify: "I offered to pay certain premiums to a man who said his name was Wright and was an agent of the company, but he declined to receive the unpaid premiums. He said the policy had lapsed." Proof of agency can not be made by mere declarations of the alleged agent, and if the evidence in question stood alone, the objection would be meritorious. The court, however, stated that the testimony was admitted to be considered in connection with other testimony in the case, to enable the jury, upon consideration of the testimony as a whole, to determine whether Wright was the agent, and that the agency could not be proved by declarations of the alleged agent alone. By reference to the brief of testimony it appears that the man who said his name was Wright, and who another witness said

was Wright, came to the home of this witness, in response to a request by telephone to the insurance company to send an agent to collect premiums. In response to this telephone message two men (one of them the man who said his name was Wright) appeared. They stated they had come in response to the telephone message. They asked for the beneficiary's receipt book. They had the company's books and receipt book. They examined the beneficiary's receipt book, and they then declined to accept any premium on the policy, stating as the reason that the policy had lapsed. We agree with the trial judge that these circumstances were sufficient to authorize the jury to conclude that Wright was an agent of the company. His statement that he was an agent, in connection with the fact that he came in response to a telephonic request for an agent, was at least a part of the res gestæ of the transaction, and so illustrative of the other circumstances to which the witness testified as to be practically inseparable from them. Even if the objection to that portion of the testimony in which the witness alleged that Wright said he was an agent should have been sustained, the fact that a man who had the company's books and receipt book, after examining the receipts for premiums which had been paid upon the policy, said that the policy had lapsed, should certainly not have been excluded; and nothing is better settled than that when an objection is offered to certain testimony as a whole, and any portion of it is competent, the objection should not be sustained. It is the duty of the counsel in making his objection, and not the duty of the court in passing upon it, to separate the wheat from the chaff.

While declarations of an alleged agent are not admissible to prove agency, still the error of permitting a witness to testify that a named person said he was the agent of another is immaterial when the statement is made in connection with the recital of such facts and circumstances as would fully authorize the conclusion that he did in fact sustain that relation to the alleged principal. Where the extraneous circumstances, independently of and without regard to the declarations of the agent himself, conclusively tend to establish the fact of his agency, his declarations, though inadmissible if standing alone, may, as part of the res gestæ of the transaction, be considered.

2. It is insisted that the court erred in failing to charge the

jury, as requested in writing, that "whatever you may find as to
the representations of the assured to the agent of the defendant,
if any were made, as to pellagra, you may also go further and in-
quire if the assured did or did not make any representations to the
agent as to not having been attended by a physician for a serious
disease preceding the date of the policy. If the facts show that she
had been so attended, and she suppressed that fact when asked with
reference thereto, then, under the terms of the policy, she could
not recover." It is insisted that the court's failure to give this
charge was error and harmful to the defendant, because the com-
pany's answer specifically set up the defense that in the written
application of the assured she had been asked if she had been at-
tended by a physician during the period, and she answered "No,"
and that the failure of the court to give this specific charge as re-
quested deprived the defendant of one of its main grounds of
defense, and was particularly harmful for the additional reason
that there was no testimony that any agent of the insurance com-
pany had ever been informed that the assured had been attended
by a physician for pellagra, during the year previous to the appli-
cation, or at any time; and, under the express terms of the contract
of insurance, the policy should be avoided. Of course, a trial judge
is never required to comply with a request to charge which does not
correctly present the law, nor is he required to perfect the charge,
so as to render it appropriate to the issues involved. For this
reason we think the court did not err in refusing the request to
charge as presented. But there is an additional reason why the
request was properly refused. To have given the instruction in
the form requested, the court would necessarily have taken away
from the jury the right to pass upon the materiality of the repre-
sentations, and would have permitted the jury to consider them
without any reference to whether they were made with intent to
deceive and defraud the company. There was evidence to the effect
that the agent of the company was informed, at the time he filled
in the application, that the insured had pellagra. If this evidence
was believed by the jury, it would seem that it would be immaterial
whether the applicant stated that the assured had been treated by
a physician or not, because all the testimony was to the effect that
pellagra is an incurable disease, and the purpose of the inquiry as
to the attendance of a physician is to enable the company, by in-

quiry of the physician, to ascertain whether the person whom it is proposed to have insured is in fact in good health. This must necessarily be true, because the statement that one is in good health is so largely a matter of opinion, and so general, as very readily to give rise to controversy. If the insurance company had knowl-edge brought home to its agent that the assured was afflicted with pellagra, it could not reasonably be assumed that the applicant would be in good health at the time of the delivery of the policy, which perhaps would occur only a few days later.

Even if the first clause of the request to charge is correct, the judge could not instruct the jury that if the evidence showed that the assured had been attended by a physician, and she suppressed that fact when asked with reference thereto, she could not recover; for it was in the province of the jury to say whether, as a matter of fact, the agent of the company had been notified that the pro-posed assured was suffering with pellagra. It was for the jury to say whether or not pellagra is an incurable disease; and it was for the jury to say, if they found the truth to be that the assured had pellagra and the agent of the company knew it at the time he took the application, whether any misrepresentation the assured may have made as to the condition of her health was material or fraud-ulent. A request for an instruction upon the principle which the plaintiff in error sought to have presented to the jury might have been so framed as to have been a complete statement of the prin-ciple as applicable to the evidence; but "unless the charge is itself a complete statement of the principle involved, without requiring addition or alteration to make it perfect, a failure to give it will not require a new trial." *Head* v. *Bridges,* 67 *Ga.* 223 (4).

3, 4. In two grounds of the motion for a new trial complaint is made of instructions of the court under which notice to an agent of an insurance company of material facts affecting the risk was im-puted to the company; and as these two grounds concern the same matter, we shall treat them together. Exception is taken to an instruction to the effect that the knowledge of the agent was the knowledge of the company, and if the agent knew, at the time that the application was made, that the assured had a fatal disease, and, notwithstanding this, the policy was issued, a recovery would not necessarily be defeated; also to the following charge: "If the agent of the company had notice before and at the time of taking

the application that the assured was afflicted with a serious or fatal disease, it would be notice to the company, and be a waiver of the clause in the policy saying it was void unless assured was in good health when the policy was issued." Neither of these instructions was erroneous. In *Fair* v. *Metropolitan Life Insurance Co., 5 Ga. App.* 708 (63 S. E. 812), this court held that the knowledge of the examining physician of the company, after physical examination of an applicant for insurance, of any of the applicant's ailments was notice to the company; and in *Ætna Insurance Co.* v. *Johnson,* 123 *Ga.* 404 (51 S. E. 339, 107 Am. St. Rep. 92), it was ruled that limitations in insurance policies, upon the authority of the agent of the company, to waive the conditions of the contract for insurance, are to be treated as referring to waivers made subsequently to the issuance of the policy. See, also, *Mechanics Ins. Co.* v. *Mutual Building Co.,* 98 *Ga.* 266 (25 S. E. 457). In *Ætna Insurance Co.* v. *Johnson,* supra, the ruling in *Thornton* v. *Travelers Insurance Co.,* 116 *Ga.* 122 (42 S. E. 287, 94 Am. St. Rep. 99), to the effect that an insurance company which, with notice that the insurer has not complied with some of the conditions of the policy, issues the policy, can defend on the ground that these conditions were not complied with, was disapproved, and since then the Supreme Court has uniformly adhered to the ruling announced in the *Johnson* case. See, also, *Springfield Fire Insurance Co.* v. *Price,* 132 *Ga.* 687, 694-5 (64 S. E. 91); *Athens Mutual Insurance Co.* v. *Evans,* 132 *Ga.* 710 (64 S. E. 993); *Athens Mutual Insurance Co.* v. *O'Keefe,* 133 *Ga.* 792 (66 S. E. 1093); *Athens Mutual Insurance Co.* v. *Ledford,* 134 *Ga.* 503-4 (68 S. E. 91).

In the policy which is the subject-matter of this suit it is stipulated that "no obligation is assumed by the company prior to the date hereof, nor unless on said date the insured is alive and in sound health;" and the point is urged that as the evidence is undisputed that the insured was not in good health on the date specified, but, on the contrary, was practically in a dying condition, as an effect of an incurable disease, there could be no recovery on the policy.

In other portions of the charge of the court all of the contentions of the defendant, so far as they are supported by the law, are fairly presented, but the trial judge took the view (and, we think, cor-

rectly) that if the jury, instead of believing that the agent of the company had no knowledge of the true condition of the health of the assured, and, instead of believing that the application and the physician's report were signed by the assured, preferred to believe that the agent of the company was informed, prior to the filing of the application for insurance, that the assured had pellagra, and further preferred to believe that she did not sign the application or the physician's report, and for that reason had not made any representation as to whether she had been attended by a physician or not, the jury should be plainly told that notice to an agent who procured the contract, of any defects in the health of the assured, was notice to the company, and that if the policy was issued after this notice, the company thereby waived the stipulation which provided that no obligation was assumed by the company unless the assured was in good health on the date of the policy. It was perhaps questionable whether the judge was technically correct in using the term "waiver," but this expression was not harmful to the plaintiff in error. He could perhaps more correctly have said that if the company, with knowledge that the applicant for insurance was suffering from an incurable disease, nevertheless issued the policy and accepted premiums thereon, it would be estopped from setting up, as a defense, the provision in reference to good health at the time and date of the policy which was relied upon by the defendant. Upon this subject see *Ætna Insurance Co.* v. *Johnson,* supra, and citations. Though there is apparently an irreconcilable conflict between the rule laid down in that case and that declared in *Thornton* v. *Travelers Insurance Co.,* 116 *Ga.* 121, the doctrine announced in the *Thornton* case was properly overruled in the *Johnson* case, and it is now well settled that knowledge of material facts on the part of an agent of an insurance company is notice to the company, and if, with this notice, the company issues a policy, it is estopped in equity from deriving a benefit from any stipulation in the policy which might have availed it if it had been ignorant of the facts. This rule is especially to be upheld in that form of insurance known as "industrial insurance," for the reason that it operates largely among and principally affects that portion of our population who pay for the protection which life insurance affords out of the weekly earnings derived from their labor, and who are in many instances easily imposed upon by the statements of agents.          *Judgment affirmed.*