## 67138. STOUFFER CORPORATION v. HENKEL.

CARLEY, Judge.

Appellee-plaintiff sustained a fall while a guest at appellant-defendant's hotel. Appellee filed a personal injury civil action against appellant and the case was tried before a jury. A verdict was returned in favor of appellee and appellant's subsequent motions for judgment n.o.v. and new trial were denied. Appellant appeals.

1. Appellant raises the general grounds. The construction of the evidence most favorably for appellee demonstrates the following: Appellee was strolling on the premises of appellant's hotel when his route took him over a footbridge which gave no appearance of being closed to guests. When partially across the bridge, appellee encountered a large puddle of water which, except for a board that had been placed across it, presented an impediment to a continuous dry path of return to the hotel. Faced with the alternatives of retracing his earlier path, stepping into the water, or crossing the board which had been placed across the puddle, appellee chose the latter course. According to appellee, he made this decision in the belief that the board had been specifically placed across the puddle in order that guests "could get over to the hotel." When appellee stepped on the board, it "vibrated" and he lost his footing and fell.

After falling, appellee made his way back to his room. He then called the hotel desk and reported the incident. According to appellee, "[r]ight after" making this call, he was visited by an unnamed individual, who, according to appellee, announced that "he worked for the hotel." Appellee also testified as to his belief that this otherwise unnamed caller was a hotel security guard because, in addition to announcing his employment with appellant, the visitor was uniformed and wore a badge. Over appellant's objection, appellee was allowed to testify that this unnamed visitor had made the following statement: "This is a shame. This never should have happened. That spot should have been either roped off or closed down and nobody should have been able to go through there."

"The law is clear that the basis for an owner's liability for injury occurring to another while on the owner's property is the owner's superior knowledge of the danger or defect which was the proximate cause of the injury. 'The true ground of liability is the proprietor's *superior knowledge* of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is *known to the owner* or occupant and *not known to the person injured* that a recovery is permitted.' [Cit.]" (Emphasis in

original.) *Purvis v. Holiday Hills Property Owners Assn.*, 163 Ga. App. 387, 388-389 (294 SE2d 592) (1982).

The dangerous instrumentality in the instant case was the insecure makeshift plank "bridge" across the puddle. Appellee was, of course, aware of the existence of the "bridge," having voluntarily elected to cross it. He asserts, however, that the "bridge" appeared to have been placed across the puddle for the use of hotel guests and that he lacked knowledge that the "bridge" was unstable and therefore dangerous to those who attempted to cross it. " '[M]ere knowledge of the danger of doing a certain act, without a full appreciation of the risk involved, is not sufficient to preclude a plaintiff from recovery, even though there may be added to the knowledge of danger a comprehension of some risk. It is still in most cases a question of fact whether, taking into account all the circumstances, including the knowledge and appreciation as well as every other material condition, the plaintiff is guilty of such negligence as to preclude recovery.' " *Scott v. Rich's, Inc.*, 47 Ga. App. 548, 551 (171 SE 201) (1933). The evidence in the instant case would authorize a finding that appellee did not have knowledge of the danger attendant upon his crossing what subsequently proved to be an unstable "bridge."

The question that remains is whether appellant's knowledge of this dangerous instrumentality was superior to appellee's. We note at the outset that appellee never contended that the plank "bridge" was a permanently constructed feature of appellant's premises. Therefore, appellant's knowledge of its existence cannot be presumed. "The liability of a proprietor under [OCGA § 51-3-1] which results from failure to keep the premises safe always depends on notice of the danger except where notice is presumed, as in cases of defective construction. 'Under numerous decisions of this court, an occupier of land is not liable for injuries sustained by an invitee upon the premises unless a dangerous condition was created by the occupier or his employee or by a third person, and in the latter case there is liability only after the occupier has knowledge of, or by exercise of ordinary care could have discovered, the hazardous condition, and then fails to use reasonable care to eliminate it.' [Cit.]" *Veterans Organization v. Potter*, 111 Ga. App. 201, 205 (141 SE2d 230) (1965).

There is no direct evidence in the instant case that the plank had been placed across the puddle at the express direction of appellant or any of its employees. We are unable to indorse the proposition that appellant's liability can be predicated merely upon proof that the dangerous instrumentality which injured appellee existed on its premises. There is no "presumption of negligence on the part of an owner or occupier merely upon a showing that an injury has been sustained by one while rightfully on the premises. The true ground of liability is the proprietor's *superior knowledge* of the perilous instrumentality

and the danger therefrom to persons going upon the property." (Emphasis in original.) *Auerbach v. Padgett*, 122 Ga. App. 79, 81 (176 SE2d 193) (1970). Since the instant case does not involve defective construction but rather what was essentially a "foreign substance" on the premises, before appellant "can be charged with negligence in failing to remove the [plank] from [over the puddle] it must be shown that it had notice, either actual or constructive, of the presence of the [plank] on" its premises. *Watson v. C & S Bank*, 103 Ga. App. 535, 536 (120 SE2d 62) (1961).

Our review of the transcript demonstrates that the only evidence which would show that appellant had the requisite prior knowledge of the dangerous condition is appellee's testimony, admitted over objection, attributing to the unnamed employee of appellant certain statements which were indicative of such prior knowledge. Accordingly, the admissibility of this evidence must be determined. In resolving this question, the testimony must be considered in light of OCGA §§ 24-3-33 and 10-6-64. *Southern R. Co. v. Allen*, 118 Ga. App. 645, 646 (1) (165 SE2d 194) (1968).

Appellant first contests this testimony on the ground that the unidentified visitor to appellee's room was not sufficiently shown to be its agent. In view of all the circumstances surrounding the visit by the unnamed individual — its occurrence "right after" appellee reported his fall, the visitor's identification of himself as an employee, the uniform and the badge — coupled with the fact that appellant did not actually produce any evidence to authorize a finding to the contrary, it was a "reasonable inference" that the visitor was in fact appellant's employee. *Platt v. Olympic Ice*, 168 Ga. App. 299, 300 (308 SE2d 704) (1983). "While agency can not be established by the declarations or conduct of the alleged agent alone ([cit.]), still the fact of agency may be established by proof of circumstances and the apparent relations and conduct of the parties . . ." *Taylor v. Young & Co.*, 21 Ga. App. 40 (1a) (93 SE 496) (1917).

Appellant also attacks the testimony concerning the visitor's acknowledgment of the dangerous condition by asserting that such statements were not within the res gestae. "[A] trial judge's determination that evidence offered as part of the *res gestae* is sufficiently informative and reliable as to warrant being considered by the jury will not be disturbed on appeal unless that determination is clearly erroneous." *Andrews v. State*, 249 Ga. 223, 228 (290 SE2d 71) (1982). We cannot say that the trial court's determination that the testimony was admissible as coming within the res gestae was clearly erroneous.

Accordingly, construing the evidence most strongly for appellee, it was sufficient to authorize the jury to find that appellant had prior knowledge of the existence of the dangerous condition on its property and that appellee, while aware of the existence of the condition, was

unaware of the danger it posed. Under this evidentiary posture, the trial court did not err in denying appellant's motions for directed verdict, judgment n.o.v. and new trial.

2. The deposition testimony of appellee's physician was read into evidence at trial. The physician's testimony indicated that certain of his opinions concerning appellee's injuries had been predicated upon various X-ray reports which had been prepared by other doctors. These other doctors' reports were attached as exhibits to the deposition of appellee's physician. When the physician's deposition was read at trial, appellee did not offer the other doctors' reports for admission into evidence. Upon determining that appellee did not intend to tender the reports into evidence, appellant attempted to have the reports admitted. The trial court refused to do so. This refusal to admit the other doctors' reports is enumerated as error.

It would appear that, had appellant objected to the admission of such *testimony* of the physician as had been predicated upon the reports that appellee declined to offer into evidence, that objection should have been sustained. "Testimony which depends on a laboratory report is inadmissible unless the report is admissible as a business record or the facts relied on therein are otherwise proved. [Cit.] 'Opinion testimony based merely upon records and case history furnished the witness by other doctors and not a part of the evidence in the case is objectionable.' [Cit.]" *Buffalo Cab Co. v. Gurley*, 134 Ga. App. 167, 168 (1) (213 SE2d 545) (1975). "Generally, an expert cannot state his opinion based upon observations or reports which are not admitted in evidence. [Cits.]" *Dual S. Enterprises v. Webb*, 138 Ga. App. 810, 813 (227 SE2d 418) (1976).

However, appellant did not object to the admission of the physician's testimony. Instead, it merely sought to have the other doctors' reports admitted into evidence, contending that these reports were admissible simply because appellee's physician had predicated certain of his opinions thereon. The records prepared by the other doctors were themselves hearsay. See *Attaway v. Morris*, 110 Ga. App. 873, 874 (3) (140 SE2d 214) (1965). We know of no rule of law which would mandate the admission into evidence of hearsay simply because a witness has erroneously been allowed to give testimony which was based thereon. If such were the rule, a party could elicit testimony which was based upon hearsay documents and then secure the admission of the documents themselves simply on the ground that previous testimony had been based upon them. For the reports to be admitted, whether offered by appellee or appellant, it would be incumbent upon the offeror to show that they came within a recognized exception to the hearsay rule. In short, the admissibility of the physician's testimony is dependent upon the admission of the other doctors' records, and not vice versa. "[E]valuations, opinions, diagnoses,

conclusions and statements of third parties not before the court are inadmissible." *Moody v. State*, 244 Ga. 247, 249 (260 SE2d 11) (1979).

Under these circumstances, the only proper objection would have been one challenging the admission of the physician's testimony in the absence of the accompanying tender and admission of the records of the other doctors. Neither appellant nor appellee was entitled to the admission of those records absent a showing that they came within a hearsay exception. *Moody v. State*, supra. Appellant made no such showing and, by not objecting to the testimony predicated upon the unadmitted records, waived appellee's failure to make such a showing. Accordingly, no reversible error is shown.

3. Appellant enumerates as error the giving of a charge on its duty as a landowner to appellee as an invitee. Considering the contested charge in isolation, it does appear to suffer from the deficiencies that appellant attributes to it. However, when the charge is read in connection with the instructions which precede and which follow it, it becomes clear that, in essence, the jury was correctly charged that "[t]he crux of the matter is that [appellant] must [have] use[d] ordinary care to keep the premises safe. Reasonably safe is not the true test." *Piggly Wiggly Southern v. Conley*, 139 Ga. App. 532, 533-534 (229 SE2d 25) (1976). Accordingly, we find no reversible error in the charge relative to the duty which devolved on appellant by virtue of its status as an owner of land open to invitees.

4. Appellant enumerates the giving of a charge relating to the alleged declarations of its unnamed employee expressing prior knowledge of the dangerous condition existing on the premises. The argument is that there was insufficient evidence of agency to authorize the giving of such a charge. The sufficiency of the evidence in this regard has been discussed previously in this opinion. "Where the extraneous circumstances, independently of and without regard to the declarations of the agent himself, conclusively tend to establish the fact of his agency, his declarations, though inadmissible if standing alone, may, as part of the res gestae of the transaction, be considered." *Rome Ins. Co. v. Thomas*, 11 Ga. App. 539 (1) (75 SE 894) (1912). We find no error in the giving of the charge on this issue.

5. Appellee originally sought $250,000 in compensatory damages from appellant. At trial, however, appellee expressly abandoned several of his claims, including those for medical expenses and lost earnings. In the jury charge, the trial court referred to the original pleadings and to the $250,000 claim sought by appellee therein. After appellant objected, the jury was returned and re-charged to the effect that appellee had abandoned all claims except that for pain and suffering.

Although appellant enumerates as error the giving of the original charge on the amount of appellee's claims, it is clear that the trial

court's re-charge on the issue of damages was sufficiently curative. See generally *Savannah Ice Delivery Co. v. Ayers*, 127 Ga. App. 560, 562 (4) (194 SE2d 330) (1972).

6. Appellant enumerates as error the giving of the following charge: "A physical injury that diminishes the power of a human being to work and labor is classed with pain and suffering. Such privation is classed with pain and suffering, especially where it involves the breaking up of established working habits." (T-122, 123.) This instruction states a correct principle of law. See *Powell v. Augusta & Summerville R. Co.*, 77 Ga. 192, 200 (10) (3 SE 757) (1886). "The charge was abstractly correct and was authorized. [Cits.]" *Central of Ga. R. Co. v. Little*, 126 Ga. App. 502, 505 (4) (191 SE2d 105) (1972).

7. Appellant also attacks the giving of another of appellee's requested charges relating to pain and suffering as the element of damages being sought in the case. Again, this charge was an abstractly correct principle of law and, as against appellant's assertions that it was argumentative and not adjusted to the evidence, was not erroneously given. If appellant desired more specific instructions on the subject of damages, it was incumbent upon it to submit a written request. See *Saxon v. Toland*, 114 Ga. App. 805 (152 SE2d 702) (1966).

8. The contention that appellant's refused request to charge on circumstantial evidence was authorized by the "speculative" evidence concerning how appellee's fall and injuries occurred is not borne out by the transcript. Appellee's evidence concerning his fall and resulting injuries was not circumstantial and speculative, but direct and positive. Accordingly, appellant's request lacked an evidentiary base and the trial court did not err in refusing to give it.

9. In related enumerations, appellant asserts error in the refusal to give two of its requests, each of which was essentially a statement that mere proof of appellee's fall did not establish appellant's responsibility therefor. The trial court in fact gave the following charge: "[F]alling and injuring oneself proves nothing. Such happenings are commonplace wherever humans go." In addition, the trial court otherwise gave full and fair charges on the burden of proof to be borne by appellee before a recovery on his part would be authorized. Under these circumstances, we find no error in the trial court's refusal to give appellant's requests.

10. Appellant also enumerates as error the trial court's failure to give two of its requests, each of which essentially dealt with its duty as a landowner to invitees thereon. Both requests were correct statements of the law and were adjusted to the evidence in the case. However, in view of the trial court's otherwise clear and full instructions regarding the necessity of showing appellant's superior knowledge of the alleged dangerous condition on its property, it was not reversible error to fail to give them.

11. It was not error to deny appellant's motion for judgment n.o.v. or new trial.

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

DECIDED FEBRUARY 29, 1984 —
REHEARING DENIED MARCH 20, 1984 — 

*Dan B. Wingate*, for appellant.
*Charles H. Hyatt*, for appellee.