## A94A2062. UNION CAMP CORPORATION v. DUKES.
(456 SE2d 645)

JOHNSON, Judge.

Randy Dukes brought this action against Union Camp Corpora-

tion after he allegedly slipped and fell in a puddle of oil while doing contracting work at Union Camp. Union Camp moved for summary judgment, which the trial court denied. We granted Union Camp's application for interlocutory appeal.

Union Camp contends that the trial court erred in denying its motion for summary judgment because it proved: (a) that it had neither actual nor constructive knowledge of the presence of oil on the floor; (b) that no such puddle could have existed; and (c) that Dukes had superior knowledge of the alleged hazard but failed to exercise ordinary care for his own safety. Viewed in a light most favorable to the respondent in a motion for summary judgment, the evidence shows that Randy Dukes was employed by Great Barrier, a subcontractor of Union Camp. Dukes worked at a Union Camp facility insulating pipes inside a paper machine. Dukes wore rubber-soled boots while working. According to Robert Jones, Union Camp's employee who serves as the assistant superintendent of the paper machine, 15,000 gallons of oil circulate through the machine each day. The paper machine also generates a tremendous amount of steam, resulting in the formation of water puddles on the machine floor. Dukes arrived at the Union Camp site for work at 7:00 a.m. Immediately after receiving his assignment from his foreman, while proceeding to his work area, Dukes noticed a puddle on the floor which he believed to be water. He walked through it and fell. While on the floor, Dukes felt the substance and determined that it was oil rather than water. Dukes did not see any other oil in the area and did not know where the oil came from, but noted that the puddle was located next to an oil pump. While Dukes initially described the oil as light blue in color, he later stated that he could not recall the specific color of the oil. Another Great Barrier employee, William Oliver, was working in the same area on the day of the accident and at approximately 8:00 a.m. noticed an amber-colored oil on the floor. Oliver stated that it was difficult to discern the color and to distinguish the oil from the puddles of water because the floor was dark and dirty. Oliver also noticed Union Camp employees in the area applying "oil dry" to absorb oil in some areas of the floor. (The record is silent as to whether Dukes noticed oil-dry on the day in question or on any other day.) According to Oliver, there was also a problem with oil leaks in the machine the week prior to the accident. Dukes had not worked inside the machine for several weeks prior to the fall. Union Camp presented evidence that a Union Camp employee inspected the area within approximately 15 minutes of the fall but did not detect or report any oil leaks or other dangerous conditions. Union Camp also introduced evidence that it does not use blue oil in its paper production.

To prevail on a motion for summary judgment, the defendant as

movant has the burden of proof and must establish the absence of superior knowledge, with all doubts and conflicts in the evidence being resolved in favor of the plaintiff. *Rose v. Kennesaw House*, 203 Ga. App. 648, 649 (417 SE2d 379) (1992). Union Camp bases its claim that it lacked superior knowledge on evidence that Dukes saw the puddle and chose to walk through it, that there was no problem with oil leaks in the machine, and that Union Camp inspected but found no oil leaks on the day in question.

First, we examine the question of whether Dukes had knowledge of the hazard and whether he assumed the risk of injury by walking through the puddle. It is clear that Dukes noticed a puddle in his path and so had knowledge of some type of potential danger. However, "(m)ere knowledge of the danger of doing a certain act, without a full appreciation of the risk involved, is not sufficient to preclude a plaintiff from recovery, even though there may be added to the knowledge of danger a comprehension of some risk. It is still in most cases a question of fact whether, taking into account all the circumstances, including the knowledge and appreciation as well as every other material condition, the plaintiff is guilty of such negligence as to preclude recovery." (Citation and punctuation omitted.) *Stouffer Corp. v. Henkel*, 170 Ga. App. 383, 384 (1) (317 SE2d 222) (1984); see *Wade v. Mitchell*, 206 Ga. App. 265, 270 (4) (b) (424 SE2d 810) (1992). Dukes did not realize until after he fell that the puddle contained oil. Walking into a puddle of water while wearing rubber-soled work boots may not present the same danger as walking into a puddle of oil. Dukes has alleged a particular hazard, in excess to that normally caused by water on the floor of the job site. A jury could conclude that the alleged hazard of oil on the floor was greater than the general hazard of water on the floor perceived by Dukes. See *Flood v. Camp Oil Co.*, 201 Ga. App. 451, 452 (411 SE2d 348) (1991).

Furthermore, "[t]he doctrine of the assumption of the risk of danger applies only where the plaintiff, with a full appreciation of the danger involved and without restriction from his freedom of choice either by the circumstances or by coercion, deliberately chooses an obviously perilous course of conduct so that it can be said as a matter of law he has assumed all risk of injury." (Citations, punctuation and emphasis omitted.) *Moore v. Svc. Merchandise Co.*, 200 Ga. App. 463, 464 (408 SE2d 480) (1991). We cannot decide as a matter of law that Dukes had either a full appreciation of the danger involved or that his freedom of choice was unrestricted. Walking through what appears to be a puddle of water while wearing rubber-soled work boots is not obviously perilous. In addition, any construction worker has a certain amount of his freedom of choice restricted by the circumstances under which he works and the coercion of seeking to remain employed. *Kitchens v. Winter Co. Builders*, 161 Ga. App. 701, 703 (1)

(289 SE2d 807) (1982). Dukes testified that there were puddles "all over the place," and that walking around the puddle would have prevented him from being able to reach the pipes he was responsible for insulating. Dukes also stated that walking around the puddle would have been impossible given the structure of the building, and would have been in direct contravention of his supervisor's orders not to walk in certain areas of the machine. The question of whether there was a safer route than the one taken by Dukes is one for the jury. See *Kitchens*, supra. "Only in clear and palpable cases, where it appears that one recklessly tests an observed and clearly obvious peril, or voluntarily assumes a position of imminent danger, will he be barred from recovery as a matter of law; otherwise, the question of what negligence, as well as whose negligence is responsible for the injury is a jury question." (Citations and punctuation omitted.) *Wade*, supra. The issue of Dukes' knowledge of the hazard is not so plain and indisputable that it may be decided as a matter of law.

Secondly, we examine whether Union Camp presented sufficient evidence to show it had neither actual nor superior constructive knowledge of the alleged hazard. Although Union Camp presented testimony that it had no ongoing oil leak problems in the machine, an assistant superintendent at Union Camp testified that its employees are trained to look for oil spills on the floor and to apply "oil dry" immediately. When presented with a photograph of the machine, Union Camp's witness verified the presence of "oil dry" on the floor. Dukes' co-worker testified that he noticed oil on the floor the morning of the accident and observed Union Camp employees in the area. He also noticed that oil dry had already been applied in some areas. This evidence presented a jury question on the issue of Union Camp's knowledge of the dangerous condition. See *Geiger v. Brooks Super Market No. 4*, 119 Ga. App. 57 (166 SE2d 580) (1969). The trial court did not err in denying Union Camp's motion for summary judgment.

*Judgment affirmed. Beasley, C. J., McMurray, P. J., Birdsong, P. J., Blackburn and Smith, JJ., concur. Ruffin, J., concurs specially. Pope, P. J., and Andrews, J., dissent.*

RUFFIN, Judge, concurring specially.

Water, oil! Oil, water! Color, color! While not in evidence, our common experience teaches us that water and oil do not mix, and that oil in a puddle on a floor takes on different colors in direct relation to how the light is reflected on it. I concur with the majority.

ANDREWS, Judge, dissenting.

I respectfully dissent.

Dukes testified on deposition that, while walking through an area of paper machine no. 8 on March 11, 1991, to get to his assigned work

area, he approached a puddle of liquid "about the size of the top of a bushel basket" on the floor in his path. He testified that he thought he could walk through the puddle because he thought it was water, so he stepped in it. He testified that when he stepped in the puddle, it turned out to be oil in which he slipped and fell. It is undisputed that water in the area of the paper machine was a normal condition of the job. Dukes does not claim that the presence of water on the floor was a defect in the premises.

Dukes was asked at his deposition given on May 26, 1993 what color the oil was. "Q: What color was the oil? A: A light color. Q: Pardon? A: Light color. Q: Light brown, like oil is? A: No. Q: Blue, black? A: It was more like a light blue. Q: Like a clear blue or a light blue? A: Right. Q: As opposed to black grease? A: No. It wasn't black grease."

On January 24, 1994, Dukes gave an affidavit in which he elaborated on and contradicted his deposition testimony. The affidavit states: "[I]n his deposition on May 26, 1993 Affiant originally stated simply that the oil was light in color. He may have been mistaken that the color was light blue but he was sure that the oil was not black grease. The oil appeared clear and this is the information Affiant tried to describe when asked whether it was blue or black. The reason for his mistake between light blue and light brown was the lapse of over two years between the time he fell and his deposition. He does not recall the specific color of the oil, but he does recall that the oil was heavier than the type of oil which would be used to lubricate small hand tools and he does specifically recall that the oil was located next to an oil pump for the paper machine. He felt the oil with his hands after he feel [sic] in it. Affiant recalls that the oil was clear, and whether it was light blue or brownish, it was not dirty oil at the time he fell in it."

Portions of the affidavit clearly contradict Dukes' earlier deposition testimony that the oil was light blue. The apparent explanation for the contradiction — that Dukes had a better memory of what the oil looked like in his affidavit given eight months after his deposition — is not reasonable. Under *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), the portions of the affidavit which contradict Dukes' earlier testimony that the oil he stepped in was light blue, should be construed against him.

Elimination of the contradictory testimony is important for two reasons. First, if the color of the liquid in the puddle was light blue, as Dukes originally testified, he should have been able to see it and distinguish it from a puddle of water on the floor. Dukes gave no explanation as to why he mistook a puddle of light blue oil for a puddle of water. Second, in support of his claim that the oil looked like a puddle of water, Dukes presented an affidavit from a co-worker, who

stated that he saw oil in various areas on the floor where Dukes fell, and that the oil was leaking from the paper machine. He further stated that "[t]he oil appeared to be amber in color but the color was difficult to distinguish when it was on the floor because the floor was dark and dirty." The Union Camp employee in charge of lubrication for the paper machine gave an affidavit stating that: "The lubricating oil used in paper machine no. 8 by Union Camp is brown in color and not light blue as described by Mr. Dukes. No bluish lubricating oil is used by Union Camp in the system of this machine." By changing his earlier testimony that the oil he stepped in was light blue, Dukes attempted to add evidence that the oil he stepped in: (1) was like the difficult-to-see amber colored oil his co-worker saw leaking from the paper machine, and (2) was consistent with the brown colored oil described in the affidavit of the Union Camp employee that was used in the paper machine. This is precisely the type of contradiction that the rule in *Prophecy Corp.,* supra, was intended to address.

Dukes also attempted to establish that he could not have avoided the puddle because of the requirements of his work. When asked on deposition why he did not simply walk around the puddle, Dukes replied that he could not go in one direction around the puddle because he had been instructed not to walk under the roller section of the paper machine. However, he was then asked if he could have gone the other way around the puddle.

"Q: Well, let me ask you this. When you came upon the puddle, which you thought was water, think with me, you could have certainly gone to the left of the machine out in this area and then gone around the puddle and come right back into the direction you were walking and gone on to where you were working, couldn't you? A: There wasn't any sense in doing that if I thought it was water. Q: In other words, you walked through it anyway; is that what you are telling me? A: Previous, before I was there, there was water all over the place. Q: No, that's not what we are talking about. Let's get back to what we were discussing. I simply asked you if you could not have walked out in this area and gone around the puddle? A: I probably could have. . . . Q: You agree that you could have avoided the puddle altogether by walking out in this area and coming back into your path had you wanted to? A: If I was working in that area instead of looking to see to my right? Q: If what? A: All my work was on the right. . . . And if I am over here, how am I going to see over here."

In the above testimony Dukes claimed that he had to walk through the puddle because avoiding it to the left would have prevented him from seeing work he was performing to the right of the puddle when he approached it. However, this claim by Dukes contradicted his earlier deposition testimony that he encountered the puddle on the way to his assigned work area, not while he was performing

work. "Q: Now, did you actually start this work before you fell? Did you fall going over there? What happened? A: I had the accident going over there to where I was going. Q: So then you were walking to the area where he gave you your instructions to the area where he wanted this work done? A: Right. . . . Q: Now, how far down the line were you going to go to do your work before you fell? In other words, if you hadn't fallen, how much farther down in this direction was the work to be done? A: I don't recall how far down it was. Q: But you know you hadn't gotten there? A: That's right. I hadn't gotten there."

Since no reasonable explanation was offered for this contradiction, Dukes' testimony that work he was performing prevented him from avoiding the puddle should be construed against him. *Prophecy Corp.*, supra. In the absence of this contradictory testimony, there was no evidence to support a claim that Dukes was coerced by the circumstances of his employment to walk through the puddle. Compare *Kitchens v. Winter Co. Builders*, 161 Ga. App. 701, 702-703 (289 SE2d 807) (1982).

Accordingly, the record, absent the contradictory testimony construed against Dukes, shows that he was confronted with a puddle of light blue oil. Dukes did not explain why he thought it was water other than to say that, previously, there had been water all over the place. Instead of taking an available path around the puddle, he freely chose to walk through it and slipped and fell. There was no evidence as to where the light blue oil came from, how it got on the floor, or how long it had been there.

Imposition of liability in this case must be based on evidence that Union Camp had superior actual or constructive knowledge of the puddle of light blue oil. *Pound v. Augusta National*, 158 Ga. App. 166, 167-168 (279 SE2d 342) (1981). "[I]n order to state a cause of action in a case where the plaintiff alleges that due to an act of negligence by the defendant he slipped and fell on a foreign substance on the defendant's floor, the plaintiff must show (1) that the defendant had actual or constructive knowledge of the foreign substance and (2) that the plaintiff was without knowledge of the substance or for some reason attributable to the defendant was prevented from discovering the foreign substance." *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980).

There is no evidence that Union Camp had any actual knowledge of the puddle of light blue oil. It is undisputed that Union Camp did not use blue colored oil in the paper machine. Other evidence showed that the oil Dukes' co-worker saw leaking from the paper machine and collecting on the floor was amber or brown in color.

As to constructive knowledge, "[i]n general, there are two classes of cases supporting claims that a defendant had constructive knowledge of a defect. The first class involves a claim that the defendant

had a duty to exercise reasonable care to inspect and keep the premises safe and that the defect had existed for a sufficient period of time to afford the defendant a reasonable opportunity to conduct such an inspection and discover and remove the defect. The second class . . . involves a claim that an employee of the defendant was in the immediate area of the hazard and had the means and opportunity to have easily seen and removed the hazard. *Banks v. Colonial Stores,* 117 Ga. App. 581, 584-585 (161 SE2d 366) (1968); *Mitchell v. Food Giant,* 176 Ga. App. 705, 708-709 (337 SE2d 353) (1985)." *Lonard v. Cooper &c. Properties,* 214 Ga. App. 862, 863-864 (449 SE2d 348) (1994).

There was no evidence that any Union Camp employees were in the area on the day Dukes fell and had the means and opportunity to have seen the puddle and removed it. Although Dukes' co-worker deposed that, prior to the day of Dukes' fall, he saw a crew of Union Camp employees in the general area cleaning up the oil leaking from the paper machine, he stated in his affidavit that he did not see a clean-up crew in the area on the day Dukes fell.

Any claim that Union Camp had constructive knowledge because of a failure to inspect the premises to keep it safe requires evidence showing the period of time the puddle at issue had been on the floor. *Colevins v. Federated Dept. Stores,* 213 Ga. App. 49, 51 (443 SE2d 871) (1994). There was no evidence as to how long the puddle of light blue oil of unknown origin had been on the floor, and "[w]ithout such proof it would not be possible to determine whether the defendant had been afforded a reasonable time within which to inspect *and* remove the hazard." (Punctuation omitted.) Id. The Union Camp employee in charge of lubrication for the paper machine gave an affidavit stating that he performed daily inspections of the machine for maintenance problems or any kind of spills, and that he did not see the spill at issue during his inspection of the area where Dukes fell at about the time of the fall.

Since there was no evidence that Union Camp had superior actual or constructive knowledge of the light blue puddle of oil in which Dukes slipped and fell, the trial court erred by denying Union Camp's motion for summary judgment.

Moreover, summary judgment was appropriate in favor of Union Camp in this case for the additional reason that the facts plainly and indisputably show that Dukes had superior knowledge of the puddle of light blue oil and failed to exercise ordinary care for his own safety.

The rule that a plaintiff with equal or superior knowledge of the alleged hazard is barred from recovery is the practical application of the rule that a plaintiff cannot recover if by ordinary care he could have avoided the consequences of the defendant's negligence. OCGA § 51-11-7; *O'Steen v. Rheem Mfg. Co.,* 194 Ga. App. 240, 242 (390 SE2d 248) (1990); *Shansab v. Homart Dev. Co.,* 205 Ga. App. 448, 450

(422 SE2d 305) (1992). "[An invitee] must exercise ordinary care for his own safety, and must by the same degree of care avoid the effect of the [proprietor's] negligence after it becomes apparent to him or in the exercise of ordinary care he should have learned of it. He must make use of all his senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to him." (Citations and punctuation omitted.) *Alterman Foods*, supra at 623.

Dukes testified that he stepped in the puddle because he thought it was water. By his own description, the puddle was actually composed of light blue oil. Dukes gave no explanation as to why he was unable to distinguish a puddle of light blue oil from a puddle of water. Dukes may not have known the puddle was oil before he stepped in it, but he knew or should have known that it was not like the water he commonly stepped through on the job. Even though he could have walked around the puddle, and even though he was aware of the normal risk of slipping in the wet conditions of the paper machine area, Dukes took the additional risk of stepping into the puddle of light blue colored liquid. In the absence of evidence to the contrary, there is a presumption that Dukes is a person possessing ordinary intelligence to whom the additional risk of slipping attendant to stepping in a puddle of light blue liquid under these circumstances would be obvious. By choosing to walk in a puddle of colored liquid in the midst of the otherwise wet slippery conditions, Dukes assumed the risks incident thereto and was guilty of such lack of ordinary care for his own safety that he cannot recover. See *Bloch v. Herman's Sporting Goods*, 208 Ga. App. 280, 281 (430 SE2d 86) (1993).

I am authorized to state that Presiding Judge Pope joins in this dissent.

DECIDED MARCH 15, 1995 —
RECONSIDERATION DENIED MARCH 30, 1995 —

*Bouhan, Williams & Levy, Frank W. Seiler, Peter D. Muller, Charles V. Loncon,* for appellant.
*Eugene C. Brooks IV,* for appellee.