### 35849. STEWART v. THE STATE.

HILL, Justice.

Rosie Stewart was indicted by the grand jury of Chattooga County in February, 1979, for the offense of fraud in obtaining public assistance, as follows: "For that the said Rosie Stewart did on or about the 28th day of February . . . [1977] . . . unlawfully commit the offense of fraud in obtaining public assistance in that the said Rosie Stewart did by means of false statements and failure to disclose information to the Chattooga County Department of Family & Children Services, obtain $764.00 in public assistance; $928.00 in bonus food coupons and $15.07 in medicaid payments to which she was not entitled, contrary to the laws of said State. . ." (The evidence at trial disclosed that these sums were paid during nine months over a two-year period.)

The defendant demurred to, and moved to quash, the indictment on the ground that the law on which it was based was unconstitutionally vague, indefinite and uncertain, in violation of the 5th, 6th and 14th Amendments and Art. I, Sec. I, Par. I (Code Ann. § 2-101) of the Constitution of Georgia of 1976. She also demurred to the indictment on the ground that the allegations therein are not sufficient to charge the defendant with an offense against the laws of this state.

After the demurrers and motion to quash were overruled, the defendant was tried, was found guilty by the jury of committing a felony and was sentenced to serve two years. On appeal, she enumerates error on the overruling of her demurrers and motion to quash, on the admission of certain testimony and documentary evidence and on the denial of her motion for directed verdict.

1. Stewart's first enumeration of error is that the law on which the indictment is based is unconstitutionally vague in that it makes it a crime to receive public assistance to which a person is "not entitled" without defining "entitlement" or referring to statutes, rules or regulations pursuant to which entitlement is determined. She cites Code Ann. § 99-9904 as being the law on which the indictment is based.

"Code Ann. § 99-9904" is the code annotated number assigned

by the Harrison Company, publishers of the Code of Georgia Annotated, to Section 13(a) of Ga. Laws 1965, pp. 385, 391, as amended by Ga. L. 1973, pp. 183, 184 (the effect of the 1976 amendment, Ga. L. 1976, pp. 1490, 1491, effective April 6, 1976, is not involved here). The law on which the indictment in this case is based was the statute enacted by the General Assembly in which the publisher found the text which it numbered § 99-9904. That is, the law on which the indictment is based was Ga. Laws 1965, p. 385, as amended. The constitutionality of an act of the General Assembly must be determined by examination of its act (as it existed at the time of the alleged offense), not by examination of an isolated section of the annotated code.

The 1965 act, entitled "Georgia Public Assistance Act of 1965" (Ga. L. 1965, pp. 385, 386; Code Ann. § 99-2901 et seq.), begins with certain definitions, and authorizes the Department of Human Resources to establish categories of public assistance (including aid to families with dependent children), and to establish rules and regulations to carry out the provisions of the act. Sections 4 and 5 of the act (Code Ann. §§ 99-2904, 99-2905) provide that public assistance shall be awarded to individuals who are residents of this state and are eligible under one of the categories established pursuant to the act as determined in accordance with the regulations of the department, in such amounts as shall be determined in accordance with regulations approved by the Commissioner.

Sections 7 and 8 of the act (Code Ann. §§ 99-2907, 99-2908) provide that upon receiving an application for public assistance, the county department of family and children services shall make an investigation to ascertain (verify) the facts supporting the application and shall decide whether the applicant is eligible for assistance and determine the amount of such assistance in accordance with the rules and regulations of the department.

Section 13(a) of Ga. L. 1965, pp. 385, 391, as amended, Ga. L. 1973, pp. 183, 184, provides in pertinent part as follows: "Any person who by means of a false statement, failure to disclose information, or impersonation, or by other fraudulent device, obtains or attempts to obtain . . . (1) any grant or payment of public assistance, food stamps, or medical assistance (medicaid) to which he is not entitled; (2) a larger amount of public assistance, food stamp allotment, or medical assistance (medicaid) than that to which he is entitled . . . shall be punished as for a misdemeanor unless the amount or value of public assistance, food stamps or medical assistance (medicaid) so obtained exceeds $500 in which event such person shall be punished as for a felony and sentenced from 1 to 3 years." The 1976

amendment changed the last sentence and increased the penalty to from 1 to 5 years (Ga. L. 1976, pp. 1490, 1491). Section 13(a) of the 1965 act, as amended, appears in essentially the same form at both Code Ann. § 99-2912 and Code Ann. § 99-9904.

As can be seen, the amount of public assistance or food stamp allotment to which an applicant is entitled is determined by the county department of family and children services based upon information disclosed, or not disclosed, by the applicant. The applicant is put on notice by the act that giving false statements, or failing to disclose requested information, to obtain public assistance constitutes a crime. We do not find the act subject to the constitutional attack made.

2. Stewart's second enumeration of error on appeal is that the indictment is legally insufficient under Code Ann. § 27-701 and the fifth, sixth and fourteenth amendments because it charges that she "did by means of false statements and failure to disclose information" commit the offense of fraud in obtaining public assistance. She argues that the indictment fails to inform her of which statements the state contends are false, what information she failed to disclose, and other facts necessary to put her on reasonable notice of the acts against which she must defend.

Although the defendant filed several demurrers, this alleged defect in the indictment was not raised by any of them unless it is encompassed in the demurrer attacking the indictment "upon the ground that the allegations therein are not sufficient to charge this defendant with any offense under the laws of this State, and said indictment is wholly insufficient in law." (This ground of demurrer raises no constitutional attack.)

Code § 27-701 provides that "Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct, which states the offense in the terms and language of this Code, or so plainly that the nature of the offense charged may easily be understood by the jury. . ." This indictment satisfies these requirements by tracking the language of Section 13(a) of Ga. L. 1973, pp. 183, 184, supra, and by being clear and easily understood. An indictment which charges a defendant with the commission of a crime in the language of a valid statute is sufficient to withstand a demurrer charging that the indictment is insufficient to charge the defendant with any offense under the laws of this state. *Eubanks v. State,* 217 Ga. 588 (1) (124 SE2d 269) (1962); compare *Langston v. State,* 109 Ga. 153 (35 SE 166) (1899), where the demurrer was directed specifically to the words "false and fraudulent means."

This indictment was not subject to the demurrer urged before and ruled on by the trial court. We do not decide whether a

demurrer in the language of this enumeration of error would have been proper under the authority of *Langston v. State,* supra. The trial court did not err in overruling the demurrer.

3. Stewart argues that state's exhibit 21 was prepared by a person who did not testify and was not subject to cross examination and that this violated her right of confrontation. She argues further that exhibit 21 was not properly authenticated and was not the best evidence available.

Exhibit 21 consists of several forms which were transmitted by DFCS (department of family and children services) to Stewart's employer, Riegel Textile Corporation, with a request that payroll information relating to Stewart for certain periods of time be provided.[1] The forms were completed by Elaine Blalock, a Riegel payroll clerk, and returned to DFCS. At trial, the state called Ms. Blalock's supervisor, Johnny Cunningham, to authenticate these documents. While testifying, Mr. Cunningham had a copy of exhibit 21 and copies of each relevant page of the Riegel payroll records covering the 40 weeks in question. He testified that exhibit 21 was prepared by his employee, Ms. Blalock, under his supervision and control from payroll records which are under his supervision, custody and control. He also stated that he had checked some, but not all, of the figures extracted by Ms. Blalock and found each that he checked to be accurate. Cunningham explained that the original payroll record as a whole "is a voluminous document, one week is probably four hundred IBM pages of printout of solid copy, and one year's would be a stack of documents of approximately four feet high." It appears from the objection by defendant that she was not asserting that the entire payroll record need be introduced but only that the copies of the pages relevant to her wage record be introduced rather than the summaries provided to DFCS by Ms. Blalock. As noted above, Mr. Cunningham had photocopies of the relevant pages of the payroll records with him at trial. When the defendant moved for introduction of the copies of the original as the "best evidence", the state replied that "They are extremely voluminous, they carry other people's names and all, there is a tremendous amount of nonessential and irrelevant information. . ." In *Bible v. Somers Const. Co.,* 197 Ga. 761 (2) (30 SE2d 623) (1944), the court said: "When pertinent and essential facts can be ascertained only by an examination of a large number of entries in books of account, an auditor or an expert accountant who has made

---

[1]Each form has space for payroll information for six weeks. Exhibit 21 consists of seven forms covering 40 weeks, from July 24, 1976, to April 16, 1977.

an examination and analysis of the books and figures may testify as a witness and give summarized statements of what the books show as a result of his investigation, provided the books themselves are accessible to the court and the parties." In this case the records were numerous and were accessible in court. We find no violation of the best evidence rule here.

The objection that exhibit 21 was not properly authenticated presents a different matter. Cunningham admittedly did not verify all the payroll figures on exhibit 21. The state argues on appeal that exhibit 21 was properly admitted as a business record. We find that exhibit 21 was not admissible as a business record of Cunningham's employer, Riegel Textile, because it was not "made in the regular course of . . . business." Code Ann. § 38-711. That is, Riegel did not make the extracts provided to DFCS in the regular course of Riegel's business in order to record an act, transaction, occurrence or event for business purposes. Rather, Riegel provided the summaries to DFCS for DFCS's use in investigation and litigation. See *Grogins v. State,* 154 Ga. App. 606 (1980); *Moore v. State,* 154 Ga. App. 535 (1980); cf. *Lewis v. United California Bank,* 143 Ga. App. 126 (237 SE2d 645) (1977), cert. dismissed, 240 Ga. 823 (242 SE2d 581) (1978). Thus, although Mr. Cunningham or Ms. Blalock or another properly qualified person could extract the payroll information pertaining to Stewart from Riegel's business records, list it, and testify as to these facts, as long as the records are available to the court and the parties, *Bible v. Somers Const. Co.,* supra, Cunningham could not authenticate exhibit 21 as a business record of Riegel and could not, without verifying all the figures, authenticate the payroll figures on exhibit 21. Exhibit 21 was not properly authenticated in this case.[2]

4. Stewart's next three enumerations of error all relate to the testimony of Jan Pullen, the Director of the Chattooga County Department of Family and Children Services. Using records prepared by staff members under her supervision and admitted into evidence without objection, and by reference to the applicable rules and regulations, Pullen testified as to the amounts which Stewart was entitled to receive according to the payroll information obtained from Riegel and the amounts which she in fact received based upon her applications as evidenced by cancelled checks. The

---

[2]In a case where such a summary is properly admitted and the figures so introduced are relied upon by another witness, there is ordinarily no violation of defendant's right of confrontation. United States v. King, 613 F2d 670, 673-674 (7th Cir. 1980).

defendant argues that this testimony was erroneously admitted, over appropriate objections, for three reasons: (a) Pullen testified to legal conclusions as to a crucial element of the crime; i.e., nonentitlement to welfare benefits and food stamps; (b) she testified as to conclusions based on rules and regulations which were not in evidence and which were not presented for the court's judicial notice; and (c) to the extent that she relied on records and computations prepared by others, her testimony violated Stewart's right of confrontation of witnesses against her.

(a) We agree with Stewart that in the absence of qualification as an expert witness, Pullen could not testify as to the amount which Stewart was rightfully entitled to receive. Code Ann. §§ 38-1708, 38-1710. The state did not ask the court to accept Pullen as an expert witness, although the defendant specifically objected to this testimony on the ground that she had not been so qualified. See 11 EGL 315, Evidence (Civil), § 18 (1979). In our view, when the objection was made and overruled by the court, that ruling in effect accepted Pullen as an expert. That is, we think that it was clear to the trial court that Pullen, who had served as Director of the Department since 1974 (she had worked for the Department since 1969), was competent to testify as an expert on this matter. In this case the witness' competency on this point is so obvious that the only rational inference from the overruling of the objection is that the trial court implicitly found her to be qualified as an expert.

We do not find that Pullen's testimony as to the amounts Stewart was entitled to receive violated the prohibition upon experts testifying as to a crucial element to be decided by the jury. As indicated in division 1, the amount of public assistance or food stamp allotment a person is entitled to receive is determined by the county department of family and children services of which Ms. Pullen was the director. The ultimate issue in this case was whether the defendant made false statements or failed to disclose information to obtain public assistance or food stamps to which she was not entitled. Pullen's testimony as to Stewart's entitlement would be of aid, perhaps essential, to the jury. *Metropolitan Life Ins. Co. v. Saul,* 189 Ga. 1 (2) (5 SE2d 214) (1939); 11 EGL 311, Evidence (Civil), § 16 (1979). Even though it may be argued that Ms. Pullen's testimony involved mathematical computations based upon legal conclusions, we find that in cases of this type the jury's need for testimony as to entitlement is such that the admission of such testimony is not error. Cf. *Traveler's Ins. Co. v. Thornton,* 119 Ga. 455 (1) (46 SE 678) (1904).

(b) We do, however, find one defect in Ms. Pullen's testimony. Her testimony as to Stewart's entitlement was based on her

calculations of entitlement which in turn were based on the rules and regulations of the Department which were not present in court, and which were neither introduced in evidence nor given in charge to the jury. The jury consequently did not have before it the rules it needed to evaluate the witness' conclusions. The jury was forced either to accept or reject the expert's testimony which was based on those rules without seeing or hearing the rules or the pertinent parts thereof. Where an expert testifies to a conclusion based on information furnished by others (e.g., the Riegel payroll figures, the assets of the applicant, the rules of the Department), then all the information utilized by that expert in forming an opinion should be presented to the jury to enable the jury to evaluate the expert's testimony.

(c) As heretofore noted, Ms. Pullen's testimony was based in part upon state's exhibit 21 which was not admissible in this case, but the figures thereon could have been authenticated (see division 3, above). If Ms. Pullen's testimony were based upon figures and records properly identified and authenticated by other witnesses, her testimony would not violate the defendant's rights of confrontation. United States v. King, supra; see *Cummings v. State,* 143 Ga. App. 811 (3) (240 SE2d 112) (1977).

5. Finally, Stewart argues that the trial court erred in denying her motion for directed verdict because in the absence of exhibit 21 the evidence was insufficient to sustain a conviction. However, we decline to review the denial of the motion for directed verdict in the absence of exhibit 21 since the information on that exhibit can be authenticated and introduced on retrial. *Hall v. State,* 244 Ga. 86, 93 (5) (259 SE2d 41) (1979).

*Judgment reversed. All the Justices concur, except Undercofler, C. J., and Jordan, P. J., who dissent to Divisions 3 and 4 and the judgment.*

ARGUED JANUARY 22, 1980 — DECIDED JUNE 25, 1980.

*W. Benjamin Ballenger, Boney & Boney, William U. Hyden, Jr.,* for appellant.
*William Campbell, District Attorney,* for appellee.