63238. DEPARTMENT OF TRANSPORTATION v. LOWERY.

McMURRAY, Presiding Judge.

The condemnor appeals from a jury verdict awarding the condemnee $17,000 for the taking of .140 acre of commercial property and a temporary construction easement to allow improvement and widening of State Highway 54 in Clayton County. *Held:*

1. Condemnor contends a new trial should have been granted because the trial court allowed the condemnee to unduly prejudice the jury by referring to the condemnor's staff appraiser and chief value witness as a "professional witness." We do not agree. The transcript discloses that on direct examination this witness established his credentials as an expert by testifying that he had been employed by the Department of Transportation (DOT) for seven years, three as a right-of-way appraiser for the 7th District; that he was graduated from the University of Georgia with a degree in Business Administration; that the DOT had sponsored his attendance at many schools supplying an education in the field of real

estate appraising given by the American Institute of Real Estate Appraisers, which he had passed; and that he had appraised the condemnee's property in the instant case. On cross-examination this witness stated that he had never bought or sold real estate in Clayton County, or acted as a broker or done an independent appraisal other than for the DOT in Clayton County. He also admitted that part of what he had been taught in the courses he attended was "how to testify in court . . . how to dress . . . how to look at the jury and to impress the jury," and that the basic thrust of the course was to train him "specifically to sit in that witness stand and testify on behalf of the Department of Transportation." At that point counsel for condemnee inquired of the witness, "How many dollars have they spent training professional witnesses how to testify in the State of Georgia?" Condemnor objected to "the form of that question," stating that it was "not a proper way to describe" the witness and "done in an effort to prejudice the jury against" him. Counsel for the condemnee responded that he was "entitled, under the statements that this witness has given, to characterize him as a professional witness," and the trial court ordered the witness to answer the question if he could.

We find no abuse of discretion. How often a witness has testified in other condemnation cases is proper inquiry for cross-examination, *Sutton v. State Hwy. Dept.,* 103 Ga. App. 29, 31 (2) (118 SE2d 285), and relevant and material matters which have first been introduced into evidence by the other party should not be restricted from a thorough and sifting cross-examination. *Bowden v. State,* 239 Ga. 821, 827 (5) (238 SE2d 905). "It is the duty of the court 'to allow a searching and skillful test of his [the witness's] intelligence, memory, accuracy and veracity. As a general rule, it is better that cross-examination should be too free than too much restricted. This is a matter that necessarily belongs to and abides in the discretion of the court . . . There must be allowed some degree of skill, if not sharpness, in conducting cross-examinations, because a witness, however fair and honest and truthful, may not be careful enough, and it is to the interest of justice to expose the blundering of a witness, as well as his wilful departures from veracity. A jury ought to be made to know what character of mind they have before them on the witness-stand, whether they have a careful, cautious witness, or one who is disposed to take things on trust. That is quite essential. But the court is there, watching the proceedings, and acquainted with all the surroundings; it is proper to leave such a question to the discretion of the court.' *Harris v. Central Railroad,* 78 Ga. 525, 534 (3 SE 355)." *Loomis v. State,* 78 Ga. App. 153, 157-158 (3) (51 SE2d 13).

2. The condemnee presented testimony of an expert witness

that a guardrail, which was erected by DOT across the front of the property for safety measures, diminished the visibility and accessibility of the commercial property and entitled condemnee to consequential damages. On cross-examination counsel for DOT asked this witness if there was a guardrail along the Zayre property adjacent to the condemnee's property, intending to refute his contention that the guardrail would adversely affect the use of the property for commercial purposes. After replying that a guardrail had been erected in recent years on a portion of the Zayre property, this witness added, "And, Mr. Oliver, you and I both was on the case that they did come back and put in a guardrail and pay damages for putting in the guardrail."

Attorney Oliver immediately moved to strike the answer and requested that the jury be removed. At that time he made a motion for mistrial on the ground that the quoted remark was unresponsive to the question and put before the jury a fact which could only have been intended to prejudice the jury since the question of guardrails was not involved in the lawsuit referred to, which had been acquired by DOT under a proceeding to acquire a slope easement. Counsel further stated that the remark was so prejudicial that no instructions given by the court would remove it from the minds of the jury, and a mistrial would have to be declared. Court was recessed in order for the judge to study the record of the case referred to.

Upon resumption of the trial, the judge announced to the jury that "it appears that we have serious problems concerning the guardrail. I feel it necessary at this point to give you a little explanatory charge." The charge given covered general principles of law and evidence as to the rights of property owners on non-limited access highways and compensation for the condemnor's taking of a convenient access. However, the trial judge stated that he was withholding a further ruling. At the close of evidence after the jury retired, counsel for condemnor requested that the entire record of the prior proceeding concerning the Zayre property be introduced for the court's ruling on the motion, and counsel for the condemnee stated "we think that if the Court is to receive evidence of that trial, that we should be able to put in any evidence concerning all the issues that were finally adjudicated by the jury and heard by the jury upon the trial of that case." The court, however, ruled that the transcript of the former case was not present and the court could not determine whether there was or was not any testimony as to guardrails and held that case had "no bearing on this case insofar as guardrails are concerned," and refused to admit any evidence in rebuttal of the remark objected to.

The transcript of the evidence and proceedings shows no further

ruling by the trial court during the trial (September 10, 11 and 12, 1980), as to condemnor's motion either to strike the testimony or grant a mistrial. However, after the verdict on September 12, 1980, an order was filed by the court on September 23, 1980, perfecting the record and denying the motion for mistrial. Later, during the trial, counsel for condemnor sought to have the entire record of the earlier case introduced in evidence, and the court ruled that that case had no bearing on this case insofar as guardrails are concerned and it would not be admitted.

The trial court gave certain curative instructions to the jury as to guardrails, although the witness was not reprimanded for injecting testimony that the DOT had paid damages for the erection of guardrails in another condemnation suit. In criminal cases where law enforcement officers inject inadmissible testimony we have gone on record as opposing same because the witness knows better than to inject inadmissible testimony thus requiring the grant of a motion for mistrial. See *Boyd v. State,* 146 Ga. App. 359, 361 (246 SE2d 396). However, rulings on motions for mistrial are largely in the discretion of the trial court and will not be disturbed unless manifestly abused. See *Bullock v. Bullock,* 244 Ga. 538, 540 (1) (261 SE2d 331). Thus, considering the circumstances and the curative instruction to the jury with reference to guardrails we refuse to hold that the trial court manifestly abused its discretion in failing to admonish the witness with reference to his volunteered information. We find no error in the denial of the motion for mistrial after the verdict.

3. Condemnor objected to the trial court's charge on consequential damages, asserting that there was insufficient evidence from which the jury could reasonably ascertain the basis to compute consequential damages because the value of the remainder tract after the taking was never established. Our review of the evidence convinces us that the testimony of the condemnee's value expert, while somewhat confusing, reasonably established a basis for computation of damage to the remaining commercial property by interference with access, and that from the evaluations given by the witness fair market value of the remainder could be determined. See *Dixie Hwy. Bottle Shop v. Dept. of Transp.,* 154 Ga. App. 405 (268 SE2d 442). The court's charge was a fair and true statement of the law. *Brock v. Dept. of Transp.,* 151 Ga. App. 905 (262 SE2d 156). Further, arguments made for the first time on appeal cannot be considered. "Exceptions to the charge not made at the time required by ... Code Ann. § 70-207 (a) ... raise no question for determination on appeal. [Cit.]" *Hines v. Tinnin,* 150 Ga. App. 74, 75 (3) (256 SE2d 622).

4. The condemnee testified that he would lose rental income

because of the construction easement, stating: "I had the property rented for signs and was supposed to receive $800 a year for five years. And, then when the sign company found out about the highway construction, they reneged on their deal with me for it . . . They notified me by letter that they could not put the sign up due to construction of the highway." When counsel for DOT objected to admission of any hearsay "conversation," the condemnee's attorney tendered a copy of the letter referred to, after establishing that the condemnee had received it through the mail and kept it in the regular course of his business. Counsel for DOT then objected to its admissibility on the grounds of hearsay and absence in court of the person who wrote it for the purpose of cross-examination. After an off-the-record conference, the trial court admitted the letter "insofar as it might tend to show the fair market value of the use of the area known as the temporary construction easement." Condemnor enumerates as error that the letter written to the condemnee by a third party, who was not a witness and had no connection with the case, was hearsay and should have been excluded from evidence.

We do not deem it necessary to reach the issue of whether the letter was admissible under the business records provisions. Code Ann. § 38-711 (Ga. L. 1952, p. 177). Any error in the admission of the letter was harmless as the facts set forth therein were otherwise fully and properly established by the testimony given by the condemnee. *Crosswell v. Arten Constr. Co.,* 152 Ga. App. 162, 165 (2) (262 SE2d 522); *First Nat. Bank v. National Dealer Services,* 155 Ga. App. 384, 385 (3) (270 SE2d 911); *Ruffin v. Bristol,* 125 Ga. App. 367 (1) (187 SE2d 577).

*Judgment affirmed. Birdsong and Pope, JJ., concur.*

DECIDED MAY 27, 1982 —
REHEARING DENIED JULY 16, 1982.

*Michael Bowers, Attorney General, G. Robert Oliver, Assistant Attorney General,* for appellant.
*John L. Watson, Jr.,* for appellee.