72572. FIDELITY & CASUALTY INSURANCE COMPANY
v. CIGNA/PACIFIC EMPLOYERS INSURANCE
COMPANY et al.
(348 SE2d 702)

CARLEY, Judge.

From the outset of the instant workers' compensation case, there has never been any question but that the claimant is entitled to receive benefits. The dispute which does exist is solely between two insurance carriers as to which one bears the responsibility for paying the benefits to which the claimant is entitled. If the claimant's current disability represents merely a worsened "change of condition" as regards his earlier employment-related injury, then appellant-Fidelity & Casualty Insurance Company (F&C) is liable for his benefits. If, on the other hand, the claimant's current disability is the result of a "new accident," then appellee-CIGNA/Pacific Employers Insurance Company (CPE) is responsible for his benefits.

This controversy arises in the context of the following relevant facts: The claimant injured his lower back while on the job in 1979. He began receiving compensation benefits from F&C, as F&C was the employer's insurance carrier at that time. Although the employer subsequently switched to CPE as its carrier, the claimant continued to receive benefits from F&C until his return to work in 1981. The claimant's job upon his return required the performance of somewhat lighter duties, but he nevertheless continued to experience back pain and to receive medical treatment therefor. The claimant's complaints of back pain intensified in late August of 1983. The medical evidence shows that a CT scan was performed which, on September 15, 1983, was interpreted by the claimant's physician as showing "a disc protrusion into the neural foramen at L5, S1 on the left which fits his symptoms beautifully." The claimant was then scheduled for another "CT scan about October 10th [1983, and another doctor's appointment] thereafter."

On or about October 1, 1983, the claimant received a painful blow to the middle of his upper back while on the job. The blow was ostensibly a "reprimand" delivered by the claimant's supervisor using the heel of his hand. Although at the hearing in the instant proceedings, the claimant denied both the seriousness of this incident and that it had caused him to experience any lower back pain, there was evidence that he made prior statements to the contrary. The medical evidence subsequent to this incident shows that, after the previously scheduled doctor's visit of October 17, 1983, the claimant's physician made the following notation: "From the base of [the claimant's] CT scan which reveals a good amount of disease, I have recommended to him chemonucleolysis of L4 and L5." The claimant underwent this recommended medical procedure in November of 1983. On December 8, 1983, the claimant's physician then noted: "X-rays, A-P, Lateral views of the lumbar spine reveal significant narrowing of L5, S1 to have occurred. A mild narrowing to have occurred at L4." After recovering from the chemonucleolysis, the claimant returned to work. On March 26, 1984, however, he was again forced to leave work as the result of back pain and has not been able to return.

Subsequent to this occurrence of claimant's latest disability, F&C sought to suspend its payment of benefits, asserting that the claimant's compensable disability was not the result of a worsening of his original 1979 injury but of an entirely "new accident" which had occurred on October 1, 1983, when he was struck by his supervisor. Since CPE was the employer's insurance carrier on the date of this asserted "new accident," F&C contended that CPE should now be responsible for paying the claimant's compensation benefits. A hearing was conducted before an administrative law judge (ALJ) to determine whether the claimant's latest disability resulted from a "change of

condition" or from a "new accident." The ALJ found that the claimant had suffered a "new accident" on October 1, 1983, and that the responsibility for payment of benefits had accordingly shifted to CPE. CPE sought a de novo review by the Full Board. The Full Board adopted the findings and conclusions of the ALJ as its own. CPE then appealed to the superior court. The superior court reversed, holding that there was "insufficient competent evidence in the record to support the Board's finding of a new injury on or about October 1, 1983. Thus, liability remains with [F&C], the insurer at the time of the initial injury. . . ." F&C then applied to this court for a discretionary appeal from the superior court's order. The application was granted and this appeal results.

1. *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982) provides: "[A] prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence. . . ." As noted previously, prior inconsistent statements concerning the October 1, 1983 incident were attributed to the claimant. However, the superior court, in reversing the instant award for insufficient evidence, did not specifically indicate that it had given consideration to the holding in *Gibbons*. The effect, if any, that application of the *Gibbons* rule might have on the sufficiency of the evidence and the superior court's reversal of the instant award was among the reasons prompting the grant of the application for a discretionary appeal.

However, having now been furnished with a complete record on appeal, our review has shown that the award of the ALJ, as adopted by the Full Board, contains the following crucial conclusion: "[T]he incident when [the claimant] was struck by [his supervisor] was a separate and distinct occurrence which *caused herniation of a second lumbar disc*." (Emphasis supplied.) This conclusion is, in turn, premised upon the ALJ's factual finding that the claimant "had a [CT] scan [in September of 1983] which [his physician] interpreted as showing a disc protrusion at L-5, S-1, on the left. On October 10 [, 1983,] he had a second [CT] scan, *which [the physician] interpreted as showing a herniated disc at L-4*, as well as a herniated disc at L-5." (Emphasis supplied.) We find no expert evidentiary support for this finding that the claimant was diagnosed as having a second herniated disc at L4 in October of 1983, shortly after the incident with his supervisor. The physician did not testify at the hearing, and only his medical reports on the claimant were admitted into evidence. Those medical reports show only that, in October of 1983, it was the physician's opinion that the claimant's recent CT scan "reveal[ed] a good amount of disease," as the result of which "disease" the physician simply recommended that the claimant undergo the medical procedure of "chemonucleolysis of L4 and L5." It was not until several

months *later,* in December of 1983, that the physician ever specifically noted, as the apparent result of *x-rays* rather than a CT scan, "[a] mild narrowing to have occurred at L4."

Other than the physician's notes showing "a good amount of disease," there is no probative evidence as to the results of a CT scan that was performed on the claimant in October of 1983. The CT scan report, which was not in evidence, was, as to the claimant, hearsay. See generally *Stouffer Corp. v. Henkel,* 170 Ga. App. 383, 386 (2) (317 SE2d 222) (1984). The claimant himself was not qualified as an expert. Accordingly, any statement of "opinion" made by or attributed to the claimant which was to the effect that his CT scan of October 1983 may have showed a second herniated disc at L4 was non-probative hearsay as to that purported fact. Under OCGA § 24-9-65, lay opinions must be based upon facts not hearsay. See *Avant Trucking Co. v. Stallion,* 159 Ga. App. 198, 200 (283 SE2d 7) (1981). Moreover, not even an expert can give an opinion based upon reports which have been prepared by others and which are not in evidence. See *Stouffer Corp. v. Henkel,* supra at 386. The nonprobative value of the claimant's statements concerning the CT scan results of October 1983 was recognized by the ALJ. She stated, at least at one point during the hearing, that such statements would not be accepted "for proof of what the [CT] Scan revealed."

2. Based upon the foregoing, we do not reach the question of whether, under *Gibbons,* the award may have been supported by "any" evidence and whether the superior court may have erred in reversing it for insufficient evidence. "[A] misstatement of significant testimony will be ground for referral back to the board of an award [even if] otherwise supported by evidence where it is possible that a proper understanding of the evidence might have caused the finder of fact to reach a different conclusion." *Aetna Ins. Co. v. Jones,* 125 Ga. App. 471 (188 SE2d 180) (1972). See also *Gates v. Aetna Ins. Co.,* 128 Ga. App. 546 (197 SE2d 381) (1973). "The most that the superior court or this court can do is, if it finds a significant misstatement of testimony in the finding of facts which in all likelihood erroneously influenced the award, to remand the case for further consideration. [Cit.]" *Nationwide Mut. Ins. Co. v. Porter,* 150 Ga. App. 513, 515 (258 SE2d 135) (1979). It cannot be said that the unsupported finding concerning the diagnosis of the claimant's lower back condition shortly after the trauma to his upper back on October 1, 1983, did not erroneously influence the finding that he suffered an entirely "new injury" as the result thereof. Accordingly, the order of the superior court reversing the award is itself reversed, with direction that the case be remanded to the Board for further proceedings not inconsistent with this opinion.

*Judgment reversed with direction. McMurray, P. J., and Pope,*

*J., concur.*

DECIDED SEPTEMBER 2, 1986.

*Mary M. Katz*, for appellant.
*Joy H. Fisher, R. Napier Murphy, Douglas A. Bennett*, for appellees.