A93A1681. LOPER et al. v. DRURY et al.
(440 SE2d 32)

SMITH, Judge.

This personal injury action arises out of an intersection collision between a dump truck driven by defendant Drury and a pickup truck driven by defendant Westberry. Plaintiff James Loper was a passenger in Westberry's truck. Loper and his wife filed this action naming as defendants Westberry and Drury, Drury's employer and his employer's wife, and the state Department of Transportation (DOT).

Parties were added and dismissed in the course of litigation, and the defendants at trial were Westberry, Drury, Drury's employer and his common carrier insurer, the DOT, and twelve DOT employees. On the trial of the case, the jury returned a verdict in favor of plaintiffs against defendant Westberry only. Plaintiffs' motion for new trial was denied, and they appeal.

1. Appellants first enumerate as error the exclusion from evidence of a letter and testimony regarding that letter by its author and by appellants' expert witness. "Questions concerning admissibility of evidence are vested in the trial court, and unless the trial court has abused its discretion, this court will not interfere." (Citations omitted.) *Estfan v. Poole*, 193 Ga. App. 507, 510-511 (3) (388 SE2d 373) (1989). We hold that under the circumstances presented here, the exclusion of the letter and testimony was not error.

Whether the DOT was negligent in failing to install a left turn signal on the southbound side of the intersection was a central issue in the trial of this case. At his deposition, appellants' expert witness, Dr. Roberts, testified that there were eight accidents at the intersection within a twelve-month period. However, on direct examination at trial, Dr. Roberts testified that he was aware of nineteen collisions in a three-year period involving southbound left-turning traffic at this intersection. His source for this information was a letter written by Linda Carver of the St. Mary's Police Department, dated February 13, 1990. Dr. Roberts stated that the larger number of accidents supported his conclusion that a left turn signal should have been installed. While Dr. Roberts testified that it did not change his overall conclusion, he acknowledged that the higher number of accidents would trigger a DOT standard or "warrant" for a left turn signal.

The Carver letter was not identified by appellants in the pretrial order and had never been produced to opposing counsel. Dr. Roberts had been asked at his deposition to inform opposing counsel of any additional information supporting his opinions. However, the letter was not provided to Dr. Roberts until April 7, 1992, the day before he testified. Counsel for the DOT and its employees objected to the use of the letter and moved to strike Dr. Roberts' testimony regarding it.

The letter itself does not provide any details or identifying numbers for any accident reports other than that for the collision involved in this case; it simply lists a total number opposite the years 1987, 1988, and 1989 for "accidents involving left turns southbound."

The trial court ordered the parties to take Carver's deposition during a recess to determine the factual basis underlying her letter. Carver was directed to bring the referenced accident reports with her to the deposition. At the deposition, Carver testified that "to the best of her knowledge" she or someone at her direction had retrieved the police department's accident reports in preparing her summary letter

in 1990. However, she had little or no independent recollection of the underlying reports and could not testify that the reports she brought to the deposition were the same as those used to prepare her letter. She testified that she was unable to gain access to some storage areas on such short notice and that some reports could be in the hands of other police personnel.

The letter refers to nineteen accidents involving left turns southbound at the intersection, but the witness produced eighteen reports, only five of which involved a southbound left-turning vehicle. Carver denied that some of these were the reports on which the letter was based, and she stated that she could not tell if she had located all the relevant reports. She could testify only that to the best of her knowledge some of the reports she brought to the deposition "could have been" the reports relied upon in her letter.

When the deposition was complete, the trial court again conferred with counsel. Counsel for appellants asserted that Carver would "stand by" her number of nineteen accidents, and the trial court allowed appellants' expert to testify to the contents of the Carver letter subject to its being stricken if appellants were not able to support the contents. Thereafter a portion of the Carver deposition was read to the jury by appellants, and the letter was admitted into evidence and published to the jury.

However, after review of the remainder of the deposition during appellees' case, the trial court concluded that Carver had failed to show the underlying basis for the report in her letter of nineteen southbound left turn accidents. The court therefore ordered the deposition testimony of Carver on direct, the letter, and that portion of Roberts' opinion based upon the letter stricken from the record. The trial court also instructed the jurors to disregard the letter and testimony with regard to the number of accidents occurring at the intersection, with the caution to consider the remainder of Dr. Roberts' testimony and opinions as they would those of any other witness. The jurors were then asked if any one of them was unable to disregard the stricken material, and none responded.

(a) We first address the Carver letter, which appellants contend should have been admitted as a business record. OCGA § 24-3-14 (b) provides: "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event shall be admissible in evidence in proof of the act, transaction, occurrence, or event, if the trial judge shall find that it was made in the regular course of any business and that it was the regular course of such business to make the memorandum or record at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter." The letter is not a business record, because it was not prepared contemporaneously with the

events in question but as much as three years later in response to a letter from appellants' investigator. It is not a record of any act, transaction, occurrence, or event but merely a compilation of figures furnished by another, and hence not a business record. *Smith v. Smith*, 224 Ga. 689, 690 (1) (164 SE2d 225) (1968). Indeed, we note that appellants' counsel originally contended the letter was attorney work product.

Moreover, a summary of business records is properly admitted on two conditions: that the original records are voluminous and contain substantial amounts of irrelevant matter; *and* that the originals are available to the court and to the parties. *Stewart v. State*, 246 Ga. 70, 73-74 (3) (268 SE2d 906) (1980); *Lawhorn v. State*, 200 Ga. App. 451, 456 (4) (408 SE2d 425) (1991). The original documents underlying the letter here were not voluminous, consisting as they apparently did of nineteen "Georgia Uniform Motor Vehicle Accident Report" forms. Nor were these original documents available to the court or to the parties. The inability of Carver to locate or identify the underlying documents and the divergence from the purported subject matter of most of the documents she did produce are circumstances that graphically illustrate the danger of admitting summaries of material not available to the court and the parties. The trial court did not abuse its discretion in excluding the letter and Carver's deposition testimony on direct examination.

(b) Appellants next contend that their expert properly could base an opinion upon the contents of the excluded letter. OCGA § 24-9-67 provides: "The opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts *as proved by other witnesses*." (Emphasis supplied.) "Generally, an expert cannot state his opinion based upon facts not within his personal knowledge which are not otherwise admitted in evidence. [Cit.] In response to a hypothetical question, an expert may assume facts not within his personal knowledge, as long as the assumed facts are placed in evidence by the testimony of other witnesses or by other legal means. [Cit.] 'On the other hand, an expert can give an opinion based upon facts which he personally observes. And where an expert personally observes data collected by another, his opinion is not objectionable merely because it is based, in part, upon the other's findings.' . . . [Cit.]" *Brown v. State*, 206 Ga. App. 800, 801 (427 SE2d 9) (1992). However, "not even an expert can give an opinion based upon reports which have been prepared by others and which are not in evidence. [Cit.]" *Fidelity &c. Ins. Co. v. Cigna/Pacific Employers Ins. Co.*, 180 Ga. App. 159, 162 (1) (348 SE2d 702) (1986). See also *Doctors Hosp. of Augusta v. Bonner*, 195 Ga. App. 152, 159 (3) (392 SE2d 897) (1990).

In quoting in their brief from *King v. Browning*, 246 Ga. 46 (268

SE2d 653) (1980), appellants omit the important qualification stated in the same paragraph that "an expert witness . . . is entitled to testify as to his opinion on the facts *as proved by other witnesses.*" (Emphasis supplied.) 246 Ga. at 47. In *King*, a surveyor's plat included written conclusions regarding boundaries which apparently relied at least in part upon hearsay. However, the surveyor and his employee testified without objection to the relevant facts underlying those conclusions, including having heard the parties reach an agreement on the boundary line. Id. The underlying facts were thus present without objection on the record, forming a proper foundation for the opinion.

There are a number of exceptions to the general rule excluding reliance on matters not in evidence, particularly in the area of expert testimony as to value and mental condition. See, e.g., *Redwing Carriers v. Knight*, 143 Ga. App. 668, 672 (6) (239 SE2d 686) (1977); *Haynes v. Huff*, 165 Ga. App. 192, 193 (299 SE2d 902) (1983). Other exceptions exist for scientific works and other learned sources of information pertaining to the expert's profession, *Rogers v. State*, 202 Ga. App. 595, 597 (2) (415 SE2d 49) (1992); *Inman v. State*, 195 Ga. App. 805, 806 (2) (395 SE2d 52) (1990), as well as for statistics and government reports generally recognized as accurate and reliable in the expert's field, *Woods v. Andersen*, 145 Ga. App. 492, 494 (3) (243 SE2d 748) (1978).

Dr. Roberts' reliance on the letter does not fall within any of these recognized exceptions. The letter is an inadmissible summary of matter not in evidence, containing the opinions and conclusions of Carver in selecting purportedly relevant documents which she cannot now retrieve or recollect. The letter's contents are not within Dr. Roberts' own knowledge or recognized scientific authority in his field, but instead concern a disputed fact which a timely search and retrieval of the relevant accident reports would have resolved. Dr. Roberts did not "personally observe" any data; he read from an unsubstantiated summary provided to him by appellants' counsel. Allowing an expert witness to testify as appellants propose would permit the admission of hearsay, speculation, and unsupported opinion, by the simple expedient of asking an expert to read the inadmissible matter into the record or testify to it while asserting that he relied upon it. The trial court did not err in excluding the testimony of Dr. Roberts with respect to the number of accidents noted in the letter.

2. Appellants contend that the trial court erred in its curative instruction to the jury concerning the letter and witnesses' testimony regarding its contents. Appellants further contend that the curative instruction on the letter was lengthier and a "face slap" to appellants, when compared with the curative instruction given to the jury regarding another accident summary prepared by the DOT. The combined effect of these two charges, according to appellants, constituted an

impermissible comment by the trial court on the evidence as forbidden by OCGA § 9-10-7.

However, as discussed above, appellants elicited testimony from their expert witness regarding the letter without producing it in discovery or listing it as an exhibit in the pretrial order. Appellants had neither shown the letter to their expert witness nor obtained the underlying documents in the two years between the date of the letter and the trial of this case. Faced with this situation in the midst of a week-long trial, the trial court conferred extensively with counsel and ordered that Carver's deposition be taken to establish the contents of the underlying documents. When the deposition failed to establish the contents or even the existence of documents supporting the assertions in the letter, the trial court struck the letter and the testimony pertaining to it.

The curative instruction on the letter was necessarily lengthy because it involved the testimony of two witnesses and an exhibit that had already been admitted into evidence and published to the jury. In contrast, the curative instruction regarding a DOT computer accident printout concerned the testimony of a single witness, and the documents in question were never admitted into evidence or displayed to the jury. Moreover, the trial court did not admonish appellants' counsel during the curative instruction and did state in the presence of the jury that the DOT would be required to abide by the same ruling as appellants.

" 'The decision whether to grant a mistrial or give a curative instruction ordinarily rests in the trial judge's sound discretion. (Cit.)' [Cit.]" *Patterson v. State*, 192 Ga. App. 449, 452 (3) (385 SE2d 311) (1989). Such rulings will not be disturbed unless the trial court's discretion is manifestly abused, whether in ruling on a motion for mistrial or in the extent of the curative action, such as admonishing the witness. See *Dept. of Transp. v. Lowery*, 163 Ga. App. 114, 117 (2) (291 SE2d 573) (1982). Here, appellants' counsel stated that he would prefer a curative instruction to a mistrial. We do not find that the wording of the trial court's curative instructions constituted a manifest abuse of discretion. Moreover, the trial court included in its final charge to the jury an additional curative instruction that "anything the Court did or said during the trial of this case was not intended to and did not intimate, hint or suggest to you which of the parties should prevail in this case." Neither of the curative instructions complained of contains any wording so compellingly erroneous as to preclude the jury from following this curative instruction. See *Harris v. State*, 202 Ga. App. 618, 619 (3) (a) (414 SE2d 919) (1992).

3. Appellants enumerate as error the exclusion from evidence of a letter from an employee of the DOT to the Federal Highway Administration, showing the estimated total cost of the intersection con-

struction to be $3,757,600. Appellants cite no legal authority for the relevance of this letter beyond the statute and cases on general principles of relevance, but they contend the letter shows additional engineering studies could have been included for a fraction of the total cost of the intersection.

No evidence or testimony was offered with regard to the calculation or source of these figures, nor what proportion of funds was allocated to engineering as opposed to materials, labor, and other necessary components of the construction cost. Counsel for appellants and for the DOT agreed that there was no contention that the cost of additional studies was a factor in the design. Particularly in view of the designation of these figures as "estimated" costs, the letter appears to have no relevance to any disputed issue in this case. OCGA § 24-2-1. Moreover, evidence of the parties' "worldly circumstances" is generally inadmissible. See *Northwestern Univ. v. Crisp*, 211 Ga. 636, 641 (2) (88 SE2d 26) (1955).

4. Appellants next contend that the special verdict form employed by the trial court was erroneous, because it failed to offer the option of returning a verdict against the DOT without returning a verdict against one or more individual employees. They assert that the form was prejudicial because it would be easier for the jury to return a verdict against the "DOT and its employees" collectively, rather than having to "single out the guilty party."

Appellants ignore the controlling authority of *Price v. Dept. of Transp.*, 257 Ga. 535 (361 SE2d 146) (1987): "This is an action against both employees of DOT and DOT itself. DOT is a defendant and liable in tort, if at all, only because of the doctrine of respondeat superior. That is why it is a defendant in this action." 257 Ga. at 536. In order to avoid the defense of sovereign immunity applicable to the DOT, the individual employees must be named as defendants. 257 Ga. at 537-538. Under the doctrine of respondeat superior, in order to sustain a verdict against the employer alone there must be negligence by the employer independent of its employee's actions; otherwise a verdict against the employer would be inconsistent, illegal, and void. *Duke Trucking Co. v. Giles*, 185 Ga. App. 833, 836 (2) (366 SE2d 216) (1988). Appellants have not pointed to any evidence or legal authority under which the DOT could be held directly liable, apart from the actions of its named employees who "designed, built and maintained" the intersection. This enumeration of error has no merit.

5. Appellants similarly contend that the special verdict form should have allowed the jury the option of returning a verdict against Drury's common carrier insurer without finding Drury or his employer liable. Appellants cite no authority for this contention, which is foreclosed by the recent decision in *Andrews v. Yellow Freight System*, 262 Ga. 476 (421 SE2d 712) (1992). In that case, the common

carrier insurer was erroneously dismissed from the action. The Georgia Supreme Court did not require the granting of a new trial, observing: "[U]nder the Motor Carrier Act, OCGA § 46-7-1 et seq., the insurance carrier is not, in reality, a *separate* party for purposes of liability, but, rather, is equivalent to a provider of a substitute surety bond, creating automatic liability in favor of a third party who may have a claim for damages for the negligence of the motor common carrier. [Cit.] The plaintiff has no *separate* claim for damages against the motor carrier's insurer. The purpose of permitting joinder of the Insurance Company in a claim against common carrier is to further the policy of the Motor Carrier Act, that is, to protect the public against injuries caused by the motor carrier's negligence. [Cits.] The provision allowing joinder of the insurer is not intended, in any respect, to enhance the value of a third party's claim for damages." (Emphasis in original.) Id. The special verdict form provided for defendants Drury, Thornton and United States Fidelity & Guaranty Company did not constitute error.

6. In appellants' final enumeration of error, they complain that the trial court erroneously struck their pastor, Kenneth Wilbanks, from the jury venire. On voir dire, Rev. Wilbanks testified that appellants are members of his congregation and that he had discussed the case in pastoral visits with them. Rev. Wilbanks agreed that if he were one of the appellees, he would not feel comfortable with someone like himself on the jury panel. At that point in the voir dire, the trial court excused Rev. Wilbanks for cause.

"In order to insure impartiality of prospective jurors [cit.], the trial court is vested with great latitude in exercising its discretion to determine whether an individual juror can decide the case without bias and in accordance with the evidence. [Cit.] Unless there is a manifest abuse of that wide discretion, the determination by the trial court will not be disturbed. [Cit.] To achieve impartiality, the trial court did not err in striking the prospective juror. [Cit.]

"Furthermore, while a party is entitled as a matter of right to an array of impartial jurors to which peremptory challenges may be directed, 'a party is entitled to no more. Having no legal right to a jury which includes those who because of scruple or bias he thinks might favor his cause, he suffers no prejudice if jurors, even without sufficient cause, are excused by the judge. Only if a judge without justification overrules a challenge for cause and thus leaves on the panel a juror not impartial, does legal error occur. . . . The entitlement of a party extends only to a fair and impartial jury; the right to reject, not select.' [Cit.]" *Southern R. Co. v. Minor*, 196 Ga. App. 183, 185 (3) (395 SE2d 845) (1990). There was no error in striking appellants' pastor from the panel.

*Judgment affirmed. Cooper, J., concurs. Beasley, P. J., concurs*

*in the judgment only.*

DECIDED DECEMBER 3, 1993 —
RECONSIDERATION DENIED DECEMBER 17, 1993 — 

*Hallman & Associates, Ronald W. Hallman, Sutton & Associates, Berrien L. Sutton,* for appellants.

*Whelchel, Brown, Readdick & Bumgartner, J. Thomas Whelchel, B. Kaye Katz, Barrow, Sims, Morrow & Lee, Jordan D. Morrow,* for appellees.