S98A0621. LEONARD v. THE STATE.
(506 SE2d 853)

HINES, Justice.

Walter L. Leonard appeals his conviction and sentence for malice murder in connection with the death of Beverly Eller.[1] For the reasons that follow, we affirm.

Eller was found dead on the morning of December 23, 1988, inside her apartment in Griffin. She had been stabbed repeatedly; the stabbing apparently occurred in her bedroom, although she was found near the door to the apartment. There were considerable bloodstains in Eller's bedroom. An empty beer bottle had rolled along the floor near the foot of Eller's bed. It was stained with blood and, in rolling, left a trail of blood on the floor, rolling over a coat hanger and coming to rest next to a pajama top on the floor; the matching pajama bottom was on the center of the bed. A bottle cap consistent with the beer bottle was found in the kitchen garbage; there was no other sign of alcoholic beverages in the apartment.

A plastic soda bottle was found atop Eller's kitchen garbage can. Next to the soda bottle was a discarded can of cinnamon rolls; eight cinnamon rolls were in a pan on the stove, and a bite had been taken

---

[11] See *Majia v. State*, 174 Ga. App. 432, 433-434 (330 SE2d 171) (1985); OCGA §§ 15-7-3; 15-7-60.

[1] The crime was committed on December 23, 1988. On June 7, 1995, Leonard was indicted on charges of malice murder, felony murder while in the commission of aggravated assault, and rape. He was tried before a jury April 22-25, 1997. The court directed a verdict of acquittal on the rape charge and Leonard was found guilty of malice murder; no verdict was returned on the felony murder charge. Leonard was sentenced to life in prison on April 25, 1997. His motion for new trial was filed on May 16, 1997 and denied on December 12, 1997. His notice of appeal was filed on December 29, 1997, his appeal was docketed in this Court on January 9, 1998, and the case was orally argued on May 18, 1998.

out of one roll. In other respects, the apartment was neatly kept. Laboratory analysis revealed fingerprints on both the beer and soda bottles.

Eller's body was discovered shortly before 8:00 a.m., December 23, when a co-worker arrived to take her to work. She had been seen at approximately 9:00 p.m. the previous night, and her neighbor heard voices in Eller's kitchen at approximately 1:00 a.m. The medical examiner testified Eller died sometime around 2:00 a.m., and may have lived some minutes after the wounds were inflicted.

In 1994, Leonard applied to work at a state prison and he was required to supply his fingerprints. A routine comparison revealed that Leonard's fingerprints matched those taken from the bottles in Eller's apartment. Hair samples were taken from the crime scene, and although Leonard could not be identified or excluded as the source of the hair, the samples were consistent with a person of Leonard's African-American ethnicity.

In December 1988, Leonard lived in Cordele. A United States Army recruiter testified that sometime in the late 1980s, Leonard was given a bus ticket to Atlanta for the purpose of taking a physical examination for recruiting purposes, and that the arrangements included an overnight stay in a town south of Atlanta, although the recruiter could not remember the town. Leonard's former girl friend testified that Leonard had taken a bus trip to Atlanta shortly before Christmas in either 1988 or 1989, for a recruiting physical. Eller's apartment was located across the street from the bus station in Griffin.

1. Leonard contends the evidence was insufficient to support the verdict because he was convicted solely on the basis of uncorroborated fingerprint evidence. See *Barnett v. State*, 153 Ga. App. 430 (1) (265 SE2d 348) (1980). The evidence against Leonard was entirely circumstantial, and to warrant conviction on such evidence, the proved facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save his guilt. OCGA § 24-4-6. Accepting Leonard's premise that the fingerprint evidence is the sole evidence linking him to the crime, to warrant conviction, his fingerprints must have been found in the place where the crime was committed and under such circumstances that they could only have been impressed at the time when the crime was committed. *White v. State*, 253 Ga. 106, 107 (1) (317 SE2d 196) (1984).

Leonard's fingerprints were found on the bloodstained beer bottle and on the soda bottle that was resting on the top of Eller's kitchen garbage can. The condition of the bedroom and the apartment in general, and the presence of the recently prepared food makes it clear that the bottles were left just before Eller's death. The evidence suggests no occasion for Leonard to have left his finger-

prints there except during the crime, and the evidence authorized the jury to conclude that every reasonable hypothesis was excluded except Leonard's guilt. Id. See also *Kier v. State*, 220 Ga. App. 649, 651 (469 SE2d 851) (1996). The evidence was sufficient to enable the jury to find beyond a reasonable doubt that Leonard was guilty of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Evidence collected from the crime scene included vaginal swabbings taken from Eller's body and semen taken from her bed comforter. The State arranged for DNA tests to be conducted comparing those samples to Leonard's DNA, but did not introduce the results of the testing at trial.[2] Leonard contends he was wrongly prevented from conducting an independent examination of the vaginal and semen samples. See *Sabel v. State*, 248 Ga. 10, 17-18 (6) (282 SE2d 61) (1981) (overruled on other grounds, *Rower v. State*, 264 Ga. 323, 325 (5) (443 SE2d 839) (1994)). But that was not the case.

At a hearing on Leonard's motion to examine physical evidence, the prosecutor related that the State's serologist/chemist had stated that, after the performance of the State-directed testing, the material remaining from the victim's vaginal swabbings was insufficient for any further testing. The prosecutor also declared that the serologist/ chemist stated that whether there was sufficient material for further testing was a matter of opinion and that Leonard's expert might disagree with her opinion on the matter. The prosecutor suggested that Leonard's expert should examine the samples to determine independently whether enough material existed to perform further testing. The court subsequently ordered that Leonard's expert be given access to certain documents and "actual physical evidence, to the extent that it exists, relative to any DNA testing." However, the defense expert did not examine the swab samples or other DNA material before trial.

At trial, the State's serologist/chemist (the same person with whom the prosecutor conferred before trial) testified on cross-examination that she believed there was sufficient DNA material to conduct further tests.[3] Leonard did not move for a continuance, did not request any other action from the court, and did not question the witness on the reason for her change of opinion. Leonard was afforded the pretrial access he requested and the court did not err in failing to give additional relief that was not requested. See *Lyon v. State*, 262 Ga. 247, 249 (3) (a) (416 SE2d 523) (1992); *Roberts v. State*, 259 Ga. 441, 443 (2) (383 SE2d 872) (1989).

---

[2] Because of the passage of time and procedures in the State laboratories, the DNA testing was done by a private firm in another state.

[3] This witness had not participated in conducting the DNA tests.

3. Leonard employed a DNA testing expert who reviewed the lab notes and results of the State-directed DNA tests. The court granted the State's motion to exclude the expert's testimony as hearsay. The expert's proffer showed he would have testified that DNA recovered from the comforter showed DNA from two persons other than Eller, and that neither DNA matched Leonard's DNA; one sample matched the DNA of Eller's boyfriend, indicating an unknown person was responsible for the other. A less discriminating DNA test was done on samples retrieved from Eller's body, and Leonard's expert believed the State's lab report indicated the presence of DNA that could have come from Leonard, or from a number of other people.[4] However, the expert would also testify this sample showed no DNA that could have come from Eller, and he concluded the sample had been confused in the lab with a sample from another incident. The State did not introduce the DNA test results or call to the stand anyone to testify about the testing. Leonard did not attempt to call any witness who could properly introduce the DNA test results and Leonard's expert was not present when the tests were performed; he only reviewed the documents associated with the testing.

Under these circumstances, the court did not abuse its discretion in granting the motion in limine. "An expert . . . may give an opinion based upon his own examination . . ., upon his observation . . ., or upon any state of facts, *supported by some evidence in the case*, which he assumes as true." *Moore v. State*, 221 Ga. 636, 643 (5) (146 SE2d 895) (1966). (Emphasis supplied.) "An opinion, based mainly on representations out of court, can be no more competent testimony than the representations. If the jury are not informed what the representations were, they do not know upon what hypothesis of facts the opinion rests. If they *are* informed, they are still left with no evidence of the existence of the facts, except unsworn declarations of a third person out of court, which are not proof in courts of law." (Punctuation omitted; emphasis in original.) Id. at 644.

In cases in which an expert's opinion is based *in part* on hearsay, the testimony may be admitted and the expert's lack of personal knowledge presents a jury question as to the weight to be accorded the expert's opinion. See, e.g., *Roberts v. Baker*, 265 Ga. 902, 903 (1) (463 SE2d 694) (1995); *King v. Browning*, 246 Ga. 46, 47 (1) (268 SE2d 653) (1980); *McEver v. Worrell Enterprises*, 223 Ga. App. 627, 630 (2) (478 SE2d 445) (1996); *Stephens v. Howard*, 221 Ga. App. 469, 470 (2) (471 SE2d 898) (1996); *Doctors Hosp. v. Bonner*, 195 Ga. App. 152, 159-160 (3) (392 SE2d 897) (1990). In such a circumstance, the

---

[4] This test was apparently chosen because of the small size of the sample and the passage of time since the murder.

expert may be examined about the hearsay upon which the opinion rests in order to allow the jury to evaluate the expert's opinion. See *Prince v. State*, 252 Ga. 82, 84 (5) (311 SE2d 433) (1984); *Stewart v. State*, 246 Ga. 70, 76 (4) (b) (268 SE2d 906) (1980); *White v. Ga. Power Co.*, 237 Ga. 341, 348 (3) (227 SE2d 385) (1976), overruled on other grounds, *DeKalb County v. Trustees &c. Elks*, 242 Ga. 707, 709 (251 SE2d 243) (1978). But this does not provide a mechanism by which hearsay that forms the sole basis of an expert's opinion can be placed before the jury in violation of the basic rules of evidence. "[N]ot even an expert can give an opinion based [entirely] upon reports which have been prepared by others and which are not in evidence." *Loper v. Drury*, 211 Ga. App. 478, 481 (1) (b) (440 SE2d 32) (1993). If an expert testifies by hypothetical question, the assumed facts must be placed in evidence by testimony or other legal means. Id. A testifying expert is not to serve as a conduit for the opinions of others. *Doctors Hosp.*, supra. See also *Peters v. State*, 268 Ga. 414, 415-416 (1) (490 SE2d 94) (1997), discussing and accepting the traditional common law approach to hearsay and expert opinion testimony in which the expert either has personal knowledge of the facts or is asked a hypothetical question based on facts admitted into evidence.

Leonard's expert did not have any personal knowledge of either the conducting of the DNA tests or the results. Nor was there any evidence introduced that would have allowed him to be examined by the use of a hypothetical question, and his opinion testimony was properly excluded.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 5, 1998.

*Lawson & Thornton, George O. Lawson, Jr., Alton Hornsby III,* for appellant.

*William T. McBroom III, District Attorney, Daniel A. Hiatt, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Allison B. Goldberg, Assistant Attorney General,* for appellee.