## S97A0956. PETERS v. THE STATE.
### (490 SE2d 94)

FLETCHER, Presiding Justice.

A jury found Rommell B. Peters guilty of the felony murder of six-month-old Shante Alston, his girl friend's daughter.[1] The sole issue he raises is whether the trial court improperly limited the testimony of the defendant's expert witness concerning the victim's medical records. Because the defendant's expert both stated his opinion on the victim's cause of death and explained his basis for that opinion, we find no reversible error in the trial court's evidentiary ruling and affirm.

The evidence at trial showed that Shante was admitted to the hospital emergency room with a bruise around three-quarters of her neck, a bulging fontanel or soft spot, and bruising inside the left eye. The treating intensive care pediatrician ordered lab tests that ruled out an infection, clotting disorder, or leukemia as the cause of the brain swelling. Based on the neck bruise and a cat scan of the brain, that physician stated that the blood circulation from Shante's heart to her brain had been cut off by a fairly significant pressure; he concluded that the bleeding inside her eye and the bulging fontanel indicated she had suffered some type of violent force. The state pathologist who performed the autopsy found that Shante had a swollen brain, subdural hematoma (collection of blood between the inside of the skull and the outer surface of the brain), bruises on the side and back of her neck, and bleeding on the outside of her spinal cord. Based on his examination of the body and slides of brain tissue sam-

---

[1] The crimes were committed on August 9, 1994, the victim died four days later, and a grand jury indicted Peters on December 16, 1994. A jury found Peters guilty of cruelty to children on October 27, 1995, and of felony murder on October 30, 1995. The trial court merged the cruelty to children count with the felony murder count and sentenced Peters to life imprisonment on November 7, 1995. Peters filed a motion for a new trial on November 27, 1995, and an amended motion on December 10, 1996. The trial court denied the motion on January 30, 1997, and Peters filed a notice of appeal on February 5, 1997. The case was docketed on March 20, 1997, and submitted for decision without oral argument on May 12, 1997.

ples, he ruled out natural diseases as a cause of death and stated that Shante died from blunt trauma to the head and neck.

The defendant presented one witness, a forensic pathologist, who testified that Shante's death was not the result of an acute traumatic event. When defense counsel began questioning the expert about the victim's medical records, which had not been admitted into evidence, the trial court interrupted and held an in-camera hearing to consider whether the expert could testify concerning those records. The trial court ruled that he could not base his opinion on them since they were hearsay and had no probative value. When questioned further, the expert stated that he did not rely on the medical records to form his opinion but instead based it on his review of the autopsy photographs and brain tissue slides. Before the jury, the expert testified that Shante's symptoms were consistent with a rebleeding of a prior chronic subdural hematoma, demonstrated the basis for his opinion with slides of brain tissue, and answered hypothetical questions based on the facts in evidence.

1. Peters raises a single issue on appeal: the trial court erred in ruling, sua sponte, that the defendant's pathologist could not state his opinion on the victim's cause of death based on medical records on which the state's expert witnesses had relied in stating their opinions. In making its ruling, the trial court followed a line of cases that rely on the traditional common law rule concerning expert opinion testimony.[2] Under that view, an expert witness may testify about opinions based on facts within his or her personal knowledge or facts admitted into evidence at trial and presented to the expert in the form of hypothetical questions.[3] The doctor may not base an expert opinion solely on the opinion of another doctor or on reports that are not admitted in evidence.[4]

Contrary to the defendant's contentions, the trial court did not prevent the defendant's expert from giving his opinion on Shante's cause of death or the factual basis for his opinion. He stated that she died from the rebleeding of an old subdural hematoma and used slides of her brain tissue to explain the basis for his opinion. Moreover, the trial court applied the same evidentiary rule to both state

---

[2] See generally Paul Milich, Georgia Rules of Evidence, § 15.5 (discussing the unsettled state of law in Georgia concerning the basis for an expert's opinion).

[3] See *Loper v. Drury*, 211 Ga. App. 478, 481 (440 SE2d 32) (1993); *Brown v. State*, 206 Ga. App. 800, 801-802 (427 SE2d 9) (1992); *Andrews v. Major*, 180 Ga. App. 393, 395 (349 SE2d 225) (1986). But see *King v. Browning*, 246 Ga. 46 (268 SE2d 653) (1980) ("When an expert's testimony is based on hearsay, the lack of personal knowledge on the part of the expert does not mandate the exclusion of the opinion but, rather, presents a jury question as to the weight which should be assigned the opinion.").

[4] *Doctor's Hosp. v. Bonner*, 195 Ga. App. 152, 159 (392 SE2d 897) (1990); *Randall Mem. Mortuary v. O'Quinn*, 202 Ga. App. 541, 542 (414 SE2d 744) (1992).

and defense expert witnesses. The trial court prohibited the state from questioning its expert witnesses about medical records from Baltimore, Maryland, because none of the persons who prepared the reports were testifying at trial and sustained the defendant's hearsay objection to the intensive care pediatrician testifying about the results of a cat scan and the radiologist's interpretation of it. Based on a review of the record, we conclude that the trial court did not err in following the traditional approach and limiting the testimony of the defendant's expert to matters within his own personal knowledge and facts admitted at trial and presented to him in the form of hypothetical questions.

2. Besides the expert testimony, the state presented at trial four statements that the defendant wrote during a five-hour interview with police. In the first statement, Peters wrote that he grabbed Shante by the arms as she was falling back; in another statement, he wrote that he grabbed her neck to keep her from falling; in the final statement, he wrote that he was upset because Shante's mother was talking to another man and lied about it. He further stated that he was sorry for handling Shante roughly "when I lost it. I did not mean to handle her to hurt her. I sweized (sic) her neck until I realized it was to[o] hard and I stopped not realizing the damage." After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found Peters guilty of the crimes charged.[5]

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 22, 1997.

*Jeffrey P. Manciagli,* for appellant.

*Robert E. Keller, District Attorney, Albert B. Collier, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.

---

[5] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).