S11A0088. HUGHES v. THE STATE.

(709 SE2d 764)

MELTON, Justice.

Following a jury trial, Brian Hughes was found guilty of malice murder, felony murder, and aggravated assault for killing his wife by running her over with a car.[1] On appeal, Hughes contends that (1) the trial court erred by failing to grant him a continuance after he announced that he was not ready to proceed to trial, and (2) his trial counsel was ineffective. We affirm.

1. Viewed in the light most favorable to the jury's verdict, the record reveals that, on December 10, 2006, Hughes got into a fight with his wife, Jacqueline, and, on the morning of December 11, 2006, a passerby found Jacqueline dead on the ground in front of the couple's home. Jacqueline's body smelled of gasoline, her bones had been fractured, her organs had been lacerated, and her bowels and chest had internally hemorrhaged. Her back prominently displayed linear and parallel grease marks, and her body was covered in various abrasions, lacerations, and bruises. Her injuries were consistent with her having been run over by a vehicle, and the grease marks on her back were consistent with her having been run over by a tire. The various abrasions and lacerations on her skin were consistent with her having been struck by the body and the under-

---

[1] On March 9, 2007, Hughes was indicted for malice murder, felony murder, and aggravated assault. Following an October 6-10, 2008 jury trial, Hughes was found guilty on all charges. On October 10, 2008, the trial court sentenced Hughes to life imprisonment for malice murder. The aggravated assault count was merged into the malice murder count for sentencing purposes, and the felony murder count was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). Hughes filed a motion for new trial on October 16, 2008, which he amended on August 31, 2009. The motion was denied on December 16, 2009. Hughes' timely appeal was docketed in this Court for the January 2011 Term after Hughes paid costs on September 10, 2010, and his case was orally argued on January 11, 2011.

carriage of a vehicle.

Hughes had a tumultuous relationship with his wife, and he had beaten his wife in the past and had threatened to kill her on more than one occasion. A few weeks before her death, Jacqueline had made plans to move out of the marital home and move in with her father, and when Jacqueline's father discussed with Hughes Jacqueline's plans to come home with him, Hughes told his father-in-law: "The only way she'll come home is in a box."

When the police arrived on the scene on December 11, 2006, they knocked on Hughes' door, and found that the door was barricaded. When Hughes eventually answered, he had blood on his right hand and smelled of gasoline. Police investigators found acceleration scuffs and other marks in the grass and dirt of Hughes' yard that led toward Jacqueline's feet and traveled alongside her body, eventually turning into tire tracks that extended out onto the roadway. Investigators found burned skin on the undercarriage of Hughes' station wagon, and the DNA from the burned skin belonged to Jacqueline Hughes. Hughes admitted to police that he had driven his station wagon on the night of December 10, 2006, and that he was the only person who had driven it.

The evidence outlined above was sufficient to enable a rational trier of fact to find Hughes guilty of all the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also OCGA § 24-4-6 (conviction based on circumstantial evidence authorized where proved facts are consistent with the hypothesis of guilt and exclude every other reasonable hypothesis save that of the guilt of the accused).

2. Hughes contends that the trial court erred by denying a continuance after the State allegedly failed to timely disclose to the defense the existence of the DNA evidence obtained from the undercarriage of Hughes' car. See OCGA § 17-16-4 (c) (under reciprocal discovery rules, State must disclose to defense additional evidence or material which is subject to discovery no later than ten days prior to trial). He also claims that the State failed to timely disclose the name of its DNA laboratory expert, which he contends also supports his argument that he was entitled to a continuance. However, Hughes' claims are belied by the record, as the record makes clear that the State informed Hughes of its DNA expert and the evidence in question more than ten days before the case was called for trial. Accordingly, we find no abuse of discretion in the trial court's refusal to grant a continuance. See, e.g., *Collum v. State*, 281 Ga. 719 (5) (642 SE2d 640) (2007).

3. Hughes argues that his trial counsel was ineffective because he failed to seek funds to retain an expert on DNA testing who could

challenge the State's DNA testing results obtained from the burnt skin retrieved from the undercarriage of Hughes' car.

In order to succeed on his claim of ineffective assistance, Hughes must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, " '[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Here, in light of the extreme difficulty in extracting DNA evidence from burned biological material, rather than hire a DNA expert, Hughes' attorney employed a forensic expert to challenge the State's theory on the manner in which Hughes' wife was allegedly run over. This strategic decision was reasonable, and does not amount to ineffective assistance. See *Smith v. State*, 283 Ga. 237 (2) (a) (657 SE2d 523) (2008). Moreover, even if we assume that Hughes' attorney's failure to hire a DNA expert somehow amounted to deficient performance, Hughes still has not shown that, had a DNA expert been hired, the result of his trial would have been different. Indeed,

> because [Hughes] neither called [a DNA expert] to testify at the motion for new trial hearing nor presented a legally acceptable substitute for [such an expert's] direct testimony so as to substantiate [his] claim that [the witness'] testimony would have been relevant and favorable to [his] defense, it was impossible for [Hughes] to show there is a reasonable probability the results of the proceedings would have been different.

(Citation and punctuation omitted.) *Dickens v. State*, 280 Ga. 320, 323 (2) (627 SE2d 587) (2006). This enumeration is without merit. *Judgment affirmed. All the Justices concur.*

DECIDED APRIL 18, 2011.

*Angela Z. Brown,* for appellant.
*Patrick H. Head, District Attorney, Grady A. Moore, John R. Edwards, Assistant District Attorneys, Thurbert E. Baker, Attorney*

*General, Paula K. Smith, Senior Assistant Attorney General, Reggie A. Lampkin, Assistant Attorney General*, for appellee.