296 Ga. 504
FINAL COPY

S14A1933. JOHNSON v. THE STATE.

BLACKWELL, Justice.

Paul Johnson was tried by a Fulton County jury and convicted of murder and other crimes, all in connection with the killing of Craig Porter. Johnson appeals, contending that the evidence is insufficient to sustain his convictions, that the trial court erred when it admitted certain testimony from the medical examiner, that the trial court erred when it admitted evidence of a photographic lineup that, Johnson says, was unduly suggestive, and that he was denied the effective assistance of counsel. Upon our review of the record and briefs, we find no error, and we affirm.[1]

---

[1] The crimes were committed on April 2, 2004. Johnson was indicted on November 9, 2005, and he was charged with malice murder, two counts of felony murder (predicated on aggravated assault and unlawful possession of a firearm by a convicted felon), aggravated assault, unlawful possession of a firearm during the commission of a felony, unlawful possession of a firearm by a convicted felon, and possession of cocaine with the intent to distribute. The trial court put the counts that charged Johnson with possession of a firearm by a convicted felon and felony murder predicated on that charge on the dead docket. Johnson was tried beginning on November 5, 2007, and the jury returned its verdict on November 13, finding Johnson guilty on all the remaining counts. On November 27, 2007, the trial court sentenced Johnson to life in prison for malice murder, a consecutive term of imprisonment for five years for unlawful possession of a firearm during the commission of a felony, and a concurrent term of imprisonment for ten years for possession of cocaine with the intent to distribute. The verdict as to felony murder predicated on aggravated assault was vacated, and the aggravated assault merged into malice murder. See Malcolm v. State, 263

1. Viewed in the light most favorable to the verdict, the evidence shows that around 3:30 on the morning of April 2, 2004, Porter and his girlfriend, Tiana Smith, left their home in Jonesboro and went to the parking lot of a nearby gas station to purchase crack cocaine. They already had been to this same parking lot to purchase drugs earlier, but they had been sold fake drugs. Having spent all their money, Porter and Smith intended to "pull off with somebody's crack" without paying for it.

The couple encountered Brent Johnson near the gas station parking lot and asked him if he knew where they could purchase "dope."[2] Brent got into their car and directed them to the Columbia Hills Apartments in Atlanta. When they arrived, Brent went to an apartment on the first floor of "Building H," and Smith saw Johnson emerge from the apartment with a gun tucked into his pants. Johnson approached the passenger side of the couple's car, engaged them in a brief conversation, and ultimately handed Smith a package containing crack

Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Johnson filed a motion for new trial on November 28, 2007, and he amended it on September 22, 2012. The trial court denied his motion on January 23, 2013, and Johnson timely filed a notice of appeal to the Court of Appeals on February 5, 2013. The case was transferred to this Court on July 31, 2014, where it was docketed for the September 2014 term and submitted for decision on the briefs.

[2] Brent Johnson is not related to the appellant, and he is referred to herein as "Brent" to avoid confusion with the appellant, to whom we refer as "Johnson."

cocaine. Porter attempted to speed off in the car, but as he drove away, Johnson began shooting at him. Porter was killed by a bullet that struck him in the back of the head, and he sustained a second gunshot wound to his back between his shoulder blades. Smith was able to steer the car out of the apartment complex, she hailed an oncoming car, and she was rescued by the driver of that car.

In the aftermath of the shooting, Johnson argued with Brent about the incident before returning to his apartment. Police officers arrived shortly thereafter, and they discovered Porter's body in the car just outside the apartment complex. There were several bullet holes in the rear window of the car and bullet fragments therein. Later that morning, officers discovered numerous shell casings outside "Building H." The investigation ultimately focused on the apartment on the first floor of that building that was frequented by Johnson, Erick Owens, Cavaras Clark, and Kevin Reese. Police found cocaine and marijuana in the apartment, and Owens admitted that he and Johnson used the apartment to sell drugs. Owens reported that Johnson admitted to having "unloaded" his gun on some people who tried to "ride out with some drugs," and Owens directed the police to Brent, whom he described as the "junkie" who brought the couple to the apartment complex and observed the

3

shooting. When police officers located Brent, he provided them with details of the shooting and its aftermath that corroborated the stories provided by Smith and Owens, and Smith identified Johnson as the shooter in a photographic lineup.

Johnson contends that the evidence is legally insufficient to prove beyond a reasonable doubt that he is guilty of the crimes of which he was convicted. In support of this contention, Johnson points to the lack of physical evidence connecting him to the crime, the inconsistent and unreliable nature of the eyewitness testimony, a discrepancy in the testimony of the lead detective, and the existence of other suspects who could have committed the crime. But the State was not required to produce any physical evidence, as "the testimony of a single witness is generally sufficient to establish a fact, [and t]he lack of corroboration [with physical evidence] only goes to the weight of the evidence and the credibility of the testifying witness, which is solely within the purview of the jury." Manuel v. State, 289 Ga. 383, 385 (1) (711 SE2d 676) (2011) (citations and punctuation omitted). And although there were multiple inconsistencies in the testimony presented by the State, "[a]s long as there is some competent evidence, even though contradicted, to support each fact

4

necessary to make out the State's case, we must uphold the jury's verdict." Rankin v. State, 278 Ga. 704 (606 SE2d 269) (2004) (citation omitted). Viewing all the evidence in the light most favorable to the verdict, we conclude that it was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Johnson was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also Simmons v. State, 291 Ga. 705, 706 (1) (733 SE2d 280) (2012).

2. Johnson claims that the trial court erred when it allowed the medical examiner to provide her opinion about matters outside her offered area of expertise. When asked at trial to explain the absence of bullet fragments in the (non-fatal) wound between Porter's shoulder blades, the medical examiner testified that she believed the bullet "created an entrance wound but did not have enough energy to penetrate his body and instead rebounded outside his body." Johnson asserts that this testimony clearly went beyond the medical examiner's expertise, see Johnson v. Knebel, 267 Ga. 853, 857-858 (3) (485 SE2d 451) (1997), but we disagree. The medical examiner demonstrated that she was experienced in dealing with certain ballistics issues related to, among other things, range of fire, soot, stippling, and the trajectory of a bullet through a

5

body. The trial court did not abuse its discretion when it allowed her to share her opinion of why the autopsy did not reveal any bullet fragments in the wound between Porter's shoulder blades. See Williams v. State, 279 Ga. 731, 732 (2) (620 SE2d 816) (2005); Nassar v. State, 253 Ga. 35 (3) (315 SE2d 903) (1984).[3]

3. Johnson also asserts that the trial court erred when it admitted evidence of the photographic lineup in which Smith identified Johnson as the assailant. Johnson claims that the lineup was unduly suggestive, and his claim on that issue was the subject of a motion to suppress and a pretrial hearing. We know that the trial court considered and rejected Johnson's claim that the lineup was unduly suggestive, but we do not know what evidence was considered by the trial court because Johnson has failed to include a copy of the transcript of the pretrial hearing in the record. Nor did Johnson move to supplement the record after the State pointed out the absence of that transcript. It is the burden of the

---

[3] Johnson also contends that the medical examiner should not have been allowed to speculate that the absence of a bullet hole in the seatback of Porter's car might be explained if the car was of the type that had headrests separate from the seatbacks, so that the bullet could have passed between the headrest and the seatback. But in addition to testifying about opinions based on facts within her own personal knowledge, an expert witness may also provide her hypothetical opinion assuming facts admitted into evidence at trial. See Peters v. State, 268 Ga. 414, 415 (1) (490 SE2d 94) (1997). The State introduced photographic evidence that, in fact, there was a gap between the headrest and seatback of the driver's seat of Porter's car, and the trial court did not abuse its discretion when it allowed the testimony at issue.

appellant to ensure that the record is complete, and "[w]hen this is not done, there is nothing for the appellate court to review." Howe v. State, 250 Ga. 811, 814 (2) (301 SE2d 280) (1983) (citation omitted). There is no evidence in the record to suggest that the photographic lineup was unduly suggestive, and the issues that Johnson raises that *are* contained in the record (such as the length of time that passed between the murder and the lineup, the failure of the lineup to include photographs of Clark and Reese, and Smith's ability to identify the perpetrator when she had been abusing drugs on the evening that the crimes took place) are not factors to be considered when determining if a lineup was unduly suggestive, but rather are factors to be considered in evaluating the likelihood of misidentification.[4] See Gibson v. State, 283 Ga. 377, 378-379 (2) (659 SE2d 372) (2008). And where an identification procedure is not unduly suggestive, it is not necessary for a trial court presented with a motion to suppress to consider whether there was a substantial likelihood of irreparable misidentification. Williams v. State, 286 Ga. 884, 888 (4) (b) (692 SE2d 374) (2010). As a result, the trial court did not err when it denied Johnson's motion

---

[4] A copy of the photographic lineup is included in the record, but Johnson does not allege, nor do we find, that there is anything about any of the photographs that would have led Smith to the virtually inevitable identification of Johnson as the perpetrator. Indeed, the men depicted in the photographs are all of a similar appearance.

to suppress Smith's pretrial identification of his photograph, and it was for the jury to decide what weight to give that identification. See Williams v. State, 290 Ga. 533, 536-537 (2) (a) (722 SE2d 847) (2012).[5]

4. Finally, Johnson contends that his trial lawyer was ineffective because he failed to object to two portions of the prosecutor's closing argument. To prevail on a claim of ineffective assistance, Johnson must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Johnson must show that the lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Johnson must show "a reasonable probability that, but for counsel's

---

[5] Johnson also alleges that his trial lawyer was ineffective because he failed to investigate or object to the admission of the photographic lineup, but this allegation is belied by the record, which shows that Johnson's lawyer did, in fact, seek to suppress Smith's identification of Johnson based upon the alleged suggestive nature of the lineup. See Williams v. State, 267 Ga. 771, 775 (3) (482 SE2d 288) (1997).

8

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694 (III) (B). See also Williams v. Taylor, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden is a heavy one, see Kimmelman, 477 U. S. at 382 (II) (C), and Johnson falls far short of carrying it.

First, Johnson claims that his trial lawyer should have objected when the prosecutor said:

> I submit to you [that the lead detective] would not have fabricated a description [made by an eyewitness of the assailant]. He has been doing this for 22 years. He knows there is somebody taking down everything he says. . . . He knows that if he intentionally falsified something, it's going to come back to bite him in the butt. . . . So I submit to you he did not intentionally put anything in his testimony that was a lie.

Johnson asserts that this argument amounted to improper bolstering of a witness, but it is not improper for counsel to urge the jury to find that a witness was truthful based upon the evidence. See Rouse v. State, 275 Ga. 605, 607 (6) (571 SE2d 353) (2002). Here, the prosecutor did not provide her personal opinion about the lead detective's veracity, but rather "submit[ted]" to the jury that it should find that the detective was truthful based upon facts contained in the

9

record. As a result, the prosecutor's argument about the lead detective was not improper. See Moore v. State, 278 Ga. 397, 400 (2) (e) (603 SE2d 228) (2004).

Johnson also claims that his trial lawyer should have objected when the prosecutor argued that the jury should not hold it against the State that many of its witnesses were either drug users or people who sold drugs. According to the prosecutor's argument, even though such people might not be the most reliable witnesses, it was Johnson who chose to associate with them. While Johnson asserts that this argument improperly put his character at issue, prosecutors have wide latitude in conducting closing argument, and they may comment upon and draw deductions from the evidence presented to the jury. See Davis v. State, 285 Ga. 343, 347 (7) (676 SE2d 215) (2009). Here, the prosecutor's argument was based on the facts in evidence and was not improper. And because the arguments made by the State in closing were not improper, they did not require any curative instruction by the trial court, and the failure to make an objection to those arguments cannot constitute ineffective assistance. See Scott v. State, 290 Ga. 883, 889 (7) (a) (725 SE2d 305) (2012).

Judgment affirmed. All the Justices concur.

Decided February 2, 2015 – Reconsideration denied February 16, 2015.

Murder. Fulton Superior Court. Before Judge Lane.

Law Firm of Shein & Brandenburg, Marcia G. Shein, Elizabeth A. Brandenburg, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Arthur C. Walton, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.