305 Ga. 388
FINAL COPY

S18A1609.  STANFORD v. THE STATE.

BENHAM, Justice.

In February 2015, Appellant Larry Stanford was convicted of two counts of malice murder in connection with the stabbing deaths of his wife, Peggy Stanford, and Phillip Leaks.[1]  On appeal, Appellant contends that insufficient evidence was presented to support a finding of guilt.  For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdict, the evidence shows as

---

[1] In March 2013, a Spalding County grand jury indicted Appellant for the offenses of burglary, aggravated assault, felony murder predicated on aggravated assault, and malice murder.  A trial was conducted February 23-27, 2015, during which the court dismissed the counts of aggravated assault and burglary because the statute of limitations for those crimes had passed; a jury found Appellant guilty of two counts of malice murder and felony murder.  Appellant was sentenced to two consecutive life sentences without parole for malice murder; the trial court merged the felony murder counts.  Appellant filed a timely motion for new trial on March 18, 2015, which was later amended on May 19, 2015, and again on November 16, 2015.  The trial court held a hearing on January 25, 2016, where it instead correctly vacated both counts of felony murder by order.  On September 2, 2016, the trial court denied the motion for new trial in relevant part.  A timely notice of appeal was filed on September 28, 2016; this case was docketed to the August 2018 term of this Court and was submitted for a decision on the briefs.

follows.  Appellant and Peggy Stanford had a tumultuous relationship, and Peggy would routinely have bruises and other injuries that were caused by Appellant.  In early June 1994, Peggy was hiding from Appellant.  On June 2, 1994, Peggy arrived at her aunt's house badly beaten, wearing torn clothing and only one shoe; she told her family and friends that Appellant believed she had stolen $1,500 from him.  Peggy also told family members that she believed Appellant was going to kill her and that she did not want to put their lives at risk by staying there.  Peggy left the house the following day, and shortly thereafter, Appellant arrived at the residence looking for her.  Appellant said that he wanted $1,500 from Peggy or he was going to kill her.  Appellant continued his search for Peggy, during which he also told another person that he was going to kill Peggy and whomever she was with when he found her because she had just stolen money from him.

On June 3, 1994, Teresa Murphy offered to give Appellant a ride after seeing him walking down the street, and Appellant asked to be driven to a series of houses to find his wife.  When Appellant found his wife at a house with Leaks, he told Murphy to wait for him to return.  Appellant then went in through the back of the house, and Murphy began hearing a lot of commotion.  Murphy testified that she saw Peggy trying to climb out of a window, but,

Peggy was "snatched back in" before she could get out; Murphy saw Appellant's hand make an up-and-down motion as if he were attacking her. Murphy attempted to leave once she saw Peggy "snatched back in," but she was having car trouble. Appellant returned to her car before she could leave, and Murphy noticed that he had changed clothes. Appellant then told Murphy that he needed to "go get them some help."

Officers responded to the scene on June 4, 1994, and found Peggy and Leaks deceased. Both victims had suffered multiple stab wounds, and Leaks had suffered blunt force trauma to the head. Within the next several days, investigators found a steak knife at the rear of the property. Appellant was arrested in connection with the deaths on June 5, 1994, and he agreed to give a statement to police and consented to a search of his residence. While being questioned by investigators, Appellant acknowledged going into the house where the bodies were found, but said that the victims were already dead when he arrived. He also asked investigators about a $1,500 check and a black leather pouch his wife had allegedly taken from him. Appellant was ultimately released, and the charges were dropped.

The case went cold until April 2013, when Edward Sharpe came forward

with information about the murders.[2]  Sharpe, Appellant's co-worker, said that Appellant did not go to work on June 4, 1994, and that he went looking for Appellant.  In contrast to Murphy, Sharpe's recollection was that when he located Appellant, it appeared as if Appellant's clothes were covered in red paint, and he saw Appellant change out of them and later throw those clothes in a dumpster.  According to Sharpe, after Appellant was released from custody, he asked Sharpe for a ride to the house where the murders occurred. Sharpe reported that Appellant entered the house and threw a kitchen knife on the ground outside before returning to the vehicle with some clothes and other belongings.  Appellant then threw those items in a dumpster after they left and told Sharpe "to keep his mouth shut or he would have problems."

Sharpe agreed to wear a recording device and speak with Appellant about what happened back in 1994.  Sharpe met with Appellant three times and discussed the murders. During the recordings, Appellant generally did not deny involvement, made references that his wife needed to be killed, and mentioned that he was careful not to leave fingerprints on the knife even though he had

---

[2] When Sharpe came forward, he had been on probation for a theft conviction stemming from a guilty plea in 1997.  Sharpe was indicted for several counts of theft in Pike County in April 2013, so he contacted police in Spalding County because he wanted to "work it off" rather than be sent back to prison.

left blood and fingerprints at the scene. Based on those recordings, police decided to re-open the case, re-interview witnesses, and re-test blood evidence. A bloody shirt that was taken from Appellant's home during the search in 1994 tested positive for blood from both Appellant and his wife. When investigators contacted Appellant's current girlfriend for questioning, she asked "Who he done killed now? Did he kill somebody else or what?"

Appellant argues that the evidence was insufficient to convict him of malice murder because the State's evidence is contradictory and cannot be reconciled. Appellant claims that Murphy and Sharpe's testimony was contradictory and did not comport with the physical evidence.[3] Additionally, Appellant contends that their testimony lacked credibility because Murphy's timeline of the murder was nonsensical and Sharpe did not come forward until 20 years after events occurred when he was facing another prison term.

When reviewing the sufficiency of the evidence, the defendant is no longer presumed innocent, and all of the evidence is to be viewed in a light most favorable to the jury verdict. *Batten v. State*, 295 Ga. 442, 443 (1) (761 SE2d 70) (2014). This Court does not reweigh the evidence or resolve conflicts

---

[3] Appellant contends, inter alia, that Murphy observed Peggy attacked from behind, while the physical evidence suggested that she was stabbed from the front.

in testimony. *Caldwell v. State*, 263 Ga. 560, 562 (1) (436 SE2d 488) (1993). So long as there is some competent evidence, even if contradicted, to support each fact necessary to the State's case beyond a reasonable doubt, the jury's verdict will be upheld. *Johnson v. State*, 296 Ga. 504, 505 (1) (769 SE2d 87) (2015).

There was evidence presented that Appellant told several people he was looking for Peggy and was going to kill her and that he entered the house where the victims were found and was seen attacking Peggy; while being recorded, Appellant admitted handling the murder weapon, being careful not to leave fingerprints on it, and said it was either Peggy or him that had to be killed; and DNA evidence taken from a bloody shirt found in Appellant's home after the murders tested positive for blood from both Appellant and Peggy. The evidence, as listed above, was sufficient for a jury to find Appellant guilty of two counts of malice murder beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); *Hughes v. State*, 289 Ga. 98 (1) (709 SE2d 764) (2011). [4]

---

[4] Appellant also contends that the State's evidence was purely circumstantial and failed to exclude the reasonable alternate hypothesis that Appellant had entered the residence and found the victims deceased. However, there was direct evidence presented that Appellant was seen attacking Peggy at the house where the murders occurred. Therefore, this contention is without merit, and the evidence presented

Judgment affirmed. All the Justices concur.

Decided March 4, 2019.

Murder. Spalding Superior Court. Before Judge Sams.

Margaret E. Bullard; Kalki Yalamanchili, for appellant.

Benjamin D. Coker, District Attorney, Marie G. Broder, Brittany A. Fallin, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellee.

---

was sufficient to convict. See *Rivera v. State*, 304 Ga. 767, 769 (1) (822 SE2d 216) (2018); *Jackson*, supra.